**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | | **Criminal No. 03-CR-14-104** |
| **v.** | : | |
| | | **(JUDGE MANNION)** |
| **REGINALD BRADDY,** | : | |
| **and FONTAINE HORTON,** | | |
| | : | |
| **Defendants** | | |
| | : | |

## MEMORANDUM

Before the court is defendant Reginald Braddy's Motion for a New Trial, (Doc. 548), as well as his Motion to Dismiss the Superseding Indictment. (Doc. 549).[1] The defendant Braddy specifically claims that he is entitled to a new trial because he was deprived of his Sixth Amendment right to self-representation. (Doc. 548, p. 3), He also argues that the Superseding Indictment, (Doc. 389), which includes charges against both defendant Braddy and his co-defendant, Fontaine Horton, was the result of vindictive prosecution by the Government, in violation of the defendants' Due Process rights. (Doc. 549, p. 5). For the reasons set forth below, the court will deny

---

[1] Defendant Braddy appears to file the Motion to Dismiss the Superseding Indictment, (Doc. 549), on both his and his co-defendant, Fontaine Horton's behalf. However, neither Fontaine Horton nor his attorney signed the motion or submitted any documents in support or concurrence of the motion. Therefore, the court treats the Motion to Dismiss as filed solely on defendant Braddy's behalf.

both motions.

By way of relevant background, on April 15, 2014, defendants Reginald Braddy and Fontaine Horton were charged in the original indictment along with five others for conspiracy to distribute or possess with intent to distribute methamphetamine. (Doc. 57). In the original indictment, Fontaine Horton was also charged with two counts of distribution or possession with intent to distribute methamphetamine. *Id.* Later, on June 9, 2015, defendants Reginald Braddy and Fontaine Horton were both charged in a Superseding Indictment, (Doc. 389), with conspiracy to distribute or possess with intent to distribute methamphetamine, *cocaine, and heroin*, and defendant Fontaine Horton was charged with two counts of distribution or possession with intent to distribute methamphetamine.

Both defendants Braddy and Horton pled not guilty to all counts of the Superseding Indictment. (Docs. 402, 404). The defendants did not enter into any plea agreements, and instead chose to continue to a jury trial. The case was originally before the Honorable Edwin M. Kosik, but was reassigned to the undersigned on March 29, 2016. The trial was conducted May 23 through May 26, 2016, and the jury found the defendants guilty on all counts. (Doc. 535). After the jury rendered a verdict against the defendants, defendant Braddy filed a Motion for a New Trial, (Doc. 548), as well as a  Motion to

Dismiss the Superseding Indictment. (Doc. 549).[2] The defendants filed a Notice of Appeal wherein they appeal the order on the Motion to Suppress entered by Judge Kosik, who originally presided over this case. (Doc. 547). This appeal is Stayed pending entry of a Judgment and Commitment order by this court. (Doc. 551).

## I.   Motion for a New Trial

The court will first address defendant Braddy's Motion for a New Trial. (Doc. 548). Defendant Braddy argues that he requested to represent himself, but the court failed to conduct a *Faretta* inquiry to determine whether or not he properly waived his right to counsel. (Doc. 548, p. 3); *see also* Faretta v. California, 422 U.S. 806, 819 (1975). Thus, he claims he was denied his Sixth Amendment right of self-representation, and deserves a new trial.

The United States Supreme Court in *Faretta* held that the Sixth Amendment provided a right to self-representation. *Faretta*, 422 U.S. 806. It further noted that this right is in direct conflict with the Sixth Amendment right

---

[2] Defendant Braddy filed the instant motions himself, when in fact, he has court appointed counsel and does not enjoy *pro se* status in this case. Defendant Braddy had already been advised that "he has been appointed competent counsel by the court and therefore any future motions to be filed in this matter must be filed through counsel." (Doc. 516); *see also* Doc. 518. The court need not accept and docket the defendant's improperly filed *pro se* motion. However, given defendant Braddy's Motion for a New Trial based upon deprivation of his constitutional right to represent himself, the court accepts and will rule on the defendant's motion.

to counsel, and as a result, invoking the right to self-representation requires a *waiver* of another constitutional right. The Court explained:

> When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits. Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open.

*Id*. at 835 (internal citations and quotations omitted). The Third Circuit has fleshed out the holding in *Faretta*, and clearly outlines the steps required for a defendant to request self-representation and effectively waive his right to counsel:

1. The defendant must assert his desire to proceed *pro se* clearly and unequivocally. *See, e.g.*, Buhl v. Cooksey, 233 F.3d 783, 791 (3d Cir.2000).
2. The court must inquire thoroughly to satisfy itself that the defendant understands "the nature of the charges, the range of possible punishments, potential defenses, technical problems that the defendant may encounter, and any other facts important to a general understanding of the risks involved." [Gov't of Virgin Islands v. Charles, 72 F.3d 401, 404 (3d Cir. 1995)].
3. The court must "assure itself" that the defendant is competent to stand trial. *Id*.

United States v. Peppers, 302 F.3d 120, 132 (3d Cir. 2002); *see also* United States v. Booker, 684 F.3d 421 (3d Cir. 2012); United States v. Bankoff, 613 F.3d 358, 373 (3d Cir. 2010). "If a defendant's waiver falls short of this standard, the error is structural in nature and requires. . . a new trial." United

States v. Booker, 684 F.3d 421 (3d Cir. 2012) (citing *Peppers*, 302 F.3d at 137).

In this case, defendant Braddy contends that he filed a letter on April 13, 2015, addressed to Judge Kosik, wherein he requested to proceed pro se, and that Judge Kosik's response simply advised the "defendant of the saying that he who represent[sic] himself has a fool as a client." (Doc. 548, p. 2). Defendant Braddy further alleges that Judge Kosik then appointed Joseph O'Brien as the defendant's counsel, "without first holding a hearing to allow the defendant to exercise his Six Amendment Right to represent [him]self." *Id.* Prior to applying the relevant Supreme Court and Third Circuit law to the defendant's circumstances, the court will first examine the correspondence between defendant Braddy and the court.

On April 13, 2015, defendant Braddy filed a letter with the court, which is labeled as a motion on the docket, but clearly appears only to be a letter to the court. (Doc. 356). In the letter, defendant Braddy clearly states, "I the defendant Reginald Braddy would like to withdraw Attorney Enid W. Harris as my counsel and proceed pro se." (Doc. 356, p. 1).  He goes on to explain that he seeks this relief because his counsel, Enid Harris, failed to provide him with wiretap warrants, orders, and affidavits, and further refused to file motions for suppression based upon defendant Braddy's personal information and opinions about the wiretap documents. *Id.* On April 17, 2015, Judge Kosik filed a letter addressed to the defendant, in which he stated that he received

the defendant's April 13 request, and then advised him that "he who represents himself has a fool as a client." (Doc. 357). Judge Kosik also described the relationship between a client and his lawyer and reminded the defendant that a lawyer need not take orders from her client. *Id.* Finally, Judge Kosik concluded the letter by stating that he would seek Enid Harris' input on the attorney-client relationship, and then "take it from there." *Id.* Judge Kosik did not make any determination or conclusion regarding the defendant's request to terminate Enid Harris or to proceed pro se; he did not deny or grant the request.

Then, on April 27, 2015, defendant Braddy filed another letter addressed to Judge Kosik, in which he attempts to clarify his intentions and frustrations with his attorney, Enid Harris, and to argue that, contrary to his attorney's opinion, he has grounds for suppression of the Government's wiretaps. (Doc. 365). He attaches to his letter excerpts from the United States Code and affidavits in support of the wiretaps relevant to his case. He appears to request relief from the court relating to suppression of the wiretaps and he desires a Franks hearing. In this letter, defendant Braddy does not mention his previous request or desire to proceed pro se, and characterizes Enid Harris as his attorney. *Id.* at 1.

In response to the defendant's April 17, 2015 letter, Judge Kosik filed a letter on April 28, 2015. (Doc. 365). In it, Judge Kosik states that insofar as the defendant's letter was a request for relief, it was inappropriate as it was

not served on anyone and it was not submitted through his attorney. *Id.*

Then, on May 6, 2015, defendant Braddy filed another letter, this time addressed to Enid Harris. (Doc. 370). He describes his previous letter to Judge Kosik, wherein he argued that he has grounds for suppression of the wiretaps and deserves a Franks hearing. *Id.* at 1-2. He further lists numerous cases, which he purports support his request for a Franks hearing, and finally concludes by stating: "with you not acting on these matters, you are not allowing me to properly defend myself. I . . . respectfully request for a Franks hearing." *Id.* at 4. On that same day, Enid Harris filed a Motion to Withdraw as Attorney for defendant Braddy, on the grounds that she and her client have "irreconcilable differences particularly as to appropriate motions to be filed and as to the role of the defendant in dictating of defense counsel's decision-making process and in the determination of defense strategy." (Doc. 373, p. 1) Judge Kosik granted the motion on May 15, 2015, (Doc. 376), and appointed Joseph O'Brien as new counsel for defendant Braddy. (Doc. 378).

Since Joseph O'Brien was appointed as counsel, defendant Braddy has not requested to proceed pro se or requested that Joseph O'Brien withdraw as his counsel. However, defendant Braddy did file a pro se Motion for Reconsideration of the Motion to Suppress, on March 7, 2016. (Doc. 509). In this motion he states that he moves for relief on the basis of *Faretta v. California,* 422 U.S. 806 (1974), and the Sixth Amendment of the Constitution. (Doc. 509, p. 1). It is not clear that he is citing anything more than his right to

file a motion to the court on his own behalf or what portion of the Sixth Amendment he is referring to. He makes no clear or unambiguous request to represent himself or continue pro se.

Finally, as evidenced by this court's April 5, 2016 Order, the defendant did attempt to file additional documents pro se; however, these documents were not docketed. After April 5, 2015 through the end of trial, the defendant never requested to proceed pro se or request that Joseph O'Brien withdraw as counsel.

After reviewing the relevant correspondence and filings, the court must now conduct the three step inquiry outlined in *United States v. Peppers*. 302 F.3d 120, 132 (3d Cir. 2002). The first step requires that a defendant clearly and unequivocally assert his desire to proceed *pro se.* As defendant Braddy states in the instant Motion for a New Trial, his April 13, 2015 letter contained a request to proceed pro se. (Doc. 356). The language in the letter is clear and unequivocal that he wishes to terminate Enid Harris as his counsel to proceed pro se. Thus, the request fulfills the first requirement set forth in *Peppers* and, as a result, the court must proceed to step two and conduct a *Faretta* inquiry to determine whether the defendant properly invokes his right to self-representation and properly waives his right to counsel. In this case, Judge Kosik received the defendant's request and expressed his desire to seek more information before taking *any step forward*. (Doc. 357). Prior to taking any actions, the defendant made numerous additional filings in which

8

he characterized Enid Harris as his attorney and made no mention of his desire to proceed pro se, as stated above. In addition, prior to Judge Kosik taking any action, Enid Harris herself requested to withdraw as counsel. New counsel was appointed, and the defendant did not renew or re-voice his desire to proceed pro se, and, in fact, worked with Joseph O'Brien in a seemingly amicable manner through the end of trial.

The question therefore becomes whether the defendant's actions and acquiescence to new counsel constitutes a waiver of the right to self-representation, and if so, whether the court's failure to provide the defendant with a *Faretta* hearing after his initial request to proceed pro se is a violation requiring a new trial. While there is no case directly on point, several cases from the Third Circuit shed light onto these issues and sufficiently guide the court's analysis.

In *Walker v. Phelps*, the District Court held that a defendant's acquiescence to his attorneys' actions in representing him constitute abandonment of his previously asserted right to self-representation, when the asserted right was never expressly ruled upon by the court. Walker v. Phelps, 910 F. Supp. 2d 734 (D. Del. 2012). The *Walker* court came to this conclusion after reviewing Supreme Court and Circuit Court precedent. Specifically, the *Walker* court notes, the "Supreme Court opined that a defendant may waive his *Faretta* rights even after he has been granted the right to proceed pro se and standby counsel has been appointed, explaining that '[o]nce a pro se

9

defendant invites or agrees to any substantial participation by counsel, subsequent appearances by counsel must be presumed to be with the defendant's acquiescence, at least until the defendant expressly and unambiguously renews his request that standby counsel be silenced.'"

*Walker*, 910 F. Supp. 2d at 742 (quoting McKaskle v. Wiggins, 465 U.S. 168, 182-84 (1984)). The *Walker* court goes on to explain,

> in cases involving *judicial inaction on a defendant's request* for self-representation, at least two Federal circuit courts have explicitly held that a defendant abandons his request to proceed pro se if he *sits by in silence and lets counsel conduct the defense* without re-asserting the right at any juncture of trial. Rayford v. Johnson, 253 F.3d 706 (Table), 2001 WL 498712, at *2 (5th Cir. 2001) (per curiam); United States v. Johnson, 223 F.3d 665, 668 (7th Cir. 2000). The Third Circuit recently indicated agreement with these cases in an unpublished decision, Brathwaite v. Phelps, 418 F. App'x 142, 147 (3d Cir. 2011).

*Walker*, 910 F. Supp. 2d at 743 (emphasis added). *Walker,* while not directly on point, supports an argument that the right to self-representation may be waived by a defendant's conduct, if the court has not yet ruled on the request.

The Third Circuit case, *Brathwaite v. Phelps*, referenced above, both supports the principle set forth in *Walker* and is particularly instructive because the facts are analogous to the instant case. Brathwaite v. Phelps, 418 Fed. Appx. 142, 147 (3d Cir. 2011) (not precedential). In *Brathwaite*, the petitioner requested to proceed pro se before the trial court because his attorney "refused to consider 'many motions that Brathwaite ha[d] requested to be filed that would have been very instrumental to his release from

10

custody.'" *Brathwaite*, 418 Fed. Appx. at 143. The trial court then sent this request to the petitioner's attorney, Facciolo, but never ruled on the motion to proceed pro se. *Id.* Later, the trial court granted the Facciolo's motion to withdraw as counsel, and appointed new counsel, who represented the petitioner during trial and through direct appeal. After new counsel was appointed, the petitioner stopped filing pro se motions with the court, expressed satisfaction with his counsel's decisions and representation, and did not again request to proceed pro se, until after his conviction. *Id.* at 144. The Supreme Court of Delaware held that the petitioner's conduct demonstrates that "he waived the right to proceed pro se in favor of exercising his constitutional right to counsel." *Id*. at 144. The District Court then concluded that "[the petitioner's] silence during . . . [the] appointment of new counsel and colloquies with [the] trial judge . . . supports the Delaware Supreme Court's conclusion that Brathwaite abandoned his previously asserted right to self-representation." *Id.* at 145. Finally, the *Brathwaite* court held that the District Court was correct in finding that the Delaware Supreme Court reasonably applied Supreme court precedent when it held "that [the petitioner] waived his right to self-representation after [new counsel] was appointed." *Id.* at 146.

Like the petitioner in *Brathwaite,* defendant Braddy initially requested to proceed pro se because his counsel was not filing motions that he felt were necessary to his defense. Judge Kosik received the request and did not make

any determination or conduct a *Faretta* inquiry. However, defendant Braddy's counsel, Enid Harris, subsequently withdrew, and new counsel was appointed. After the appointment of new counsel, defendant Braddy did not make any requests to proceed pro se, nor did he complain about the conduct of his new attorney. Therefore, the principles set forth in *Faretta* and its progeny apply to this case in the same way that they applied in *Brathwaite*. Defendant Braddy's acquiescence and failure to reassert his right to self-representation after new counsel was appointed demonstrates that he waived his right to proceed pro se.

Prior to determining whether this finding lends itself to the conclusion that the defendant's right to self-representation has not been violated, the court must also examine Judge Kosik's not conducting a *Faretta* inquiry after the defendant's April 13, 2015 letter. (Doc. 356). The Supreme Court has held that a court's improper denial of the right to self-representation is a structural error, or one which affects the substantial rights of a defendant regardless of their actual impact on the trial, and as such requires a new trial. McKaskle v. Wiggins, 465 U.S. 168, 177 (1984) ("Since the right of self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to 'harmless error' analysis. The right is either respected or denied; its deprivation cannot be harmless."); *see also* United States v. Marcus, 560 U.S. 258, 263 (2010); United States v. Gonzalez-Lopez, 548 U.S. 140, 149 (2006). One of our sister

12

courts in the Third Circuit clearly explained that while the Supreme Court finds improper denial of the right to self-representation to be a structural error, "the Supreme Court has never held that the failure to conduct a *Faretta* hearing amounts to an improper denial of the right to self-representation. In fact, the Supreme Court opinions acknowledging that an improper denial of the right to self-representation constitutes a structural error have involved situations where the trial court actually considered the request for self-representation and violated the right in some other manner; none of the decisions involved a situation where, as here, there simply was no *Faretta* inquiry and no clear denial of a request to proceed pro se." Brathwaite v. Phelps, No. CIV.A. 06-472-GMS, 2009 WL 3345595, at *10 (D. Del. Oct. 16, 2009), *aff'd*, 418 Fed. Appx. 142 (3d Cir. 2011). The court agrees with this analysis, and therefore finds that failure to conduct a *Faretta* inquiry, alone, does not amount to a structural error requiring a new trial.[3]

---

[3] Because defendant Braddy subsequently waived his right to self-representation by accepting new counsel, cooperating with new counsel, and failing to indicate any dissatisfaction with new counsel, the court cannot say that the lack of a *Faretta* inquiry violated the underlying principle of *Faretta* and *McKaskle.* In these cases, the Supreme Court made clear that the heart of a defendant's Sixth Amendment right to self-representation is a defendant's right to present his case *his own way.* McKaskle v. Wiggins, 465 U.S. 168, 177 (1984) ("In determining whether a defendant's Faretta rights have been respected, the primary focus must be on whether the defendant had a fair chance to *present his case in his own way*." (emphasis added)); Faretta v. California, 422 U.S. 806, 821 (1975) ("Unless the accused has acquiesced in such representation, the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, *it is not his defense*."

Ultimately, the court finds that not conducting a *Faretta* inquiry following defendant Braddy's initial request to proceed pro se may constitute an error, however, even if error, it does not lead to the conclusion that his Sixth Amendment rights were violated. The defendant's subsequent conduct and acceptance of newly appointed counsel clearly establishes a waiver of his Sixth Amendment right to self-representation, and further demonstrates that he acquiesced to new counsel and, therefore, had a fair opportunity to present his case. Thus, defendant Braddy is not entitled to a new trial based upon violation of his Sixth Amendment right to self-representation, and his motion will be **DENIED**.

## II.    Motion to Dismiss the Superseding Indictment

Turning now to the Motion to Dismiss the Superseding Indictment, defendant Braddy files this motion on the grounds of vindictive prosecution. He alleges that the Government's decision to file the Superseding Indictment against the defendants and to include in such Superseding Indictment "additional drug offenses" relating to heroin and cocaine, constitutes unfair treatment and punishment in retaliation for the defendants' decision to

------

(emphasis added)). Thus, the court finds that despite Judge Kosik's not conducting a *Faretta* inquiry, defendant Braddy's subsequent waiver of his right to self-representation allowed him to present his case and defend himself in a way that comports with the spirit of *Farette* and *McKaskle*.

exercise their constitutional rights. (Doc. 549, pp. 3-4).

The court finds that this argument fails both procedurally and substantively. First, the Motion must be denied because the motion is untimely and therefore procedurally deficient. The Federal Rules of Criminal Procedure provide that certain motions must be made *before trial*. Fed.R.Crim.P. 12(b)(3). Rule 12 specifically states:

> 3) Motions That Must Be Made Before Trial. The following defenses, objections, and requests must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits:
>     (A)   a defect in instituting the prosecution, including:
>         (I)   improper venue;
>         (ii)  preindictment delay;
>         (iii) a violation of the constitutional right to a speedy trial;
>         (iv) ***selective or vindictive prosecution***; and
>         (v)  an error in the grand-jury proceeding or preliminary hearing

Fed.R.Crim.P. 12(b)(3) (emphasis added). Thus, a motion for vindictive prosecution, such as this one, must be made prior to going to trial if the basis for the motion is reasonably available prior to trial.

Defendant Braddy's argument is based primarily upon the fact that he and defendant Horton were ultimately charged with offenses that differed from those included in the original indictment and therefore they were treated "differently and unfairly" from the other five original defendants. (Doc. 549, p. 3). Specifically, defendant Braddy states, "[b]efore the government filed a Superceding Indictment in this matter Defendant Horton received a copy of an email that was sent to his counsel, David Cherundolo from AUSA Robert

15

O'Hara, stating that Mr. Horton is not presently charged with any heroin or cocaine offense and that this may change should he decide to proceed to trial." *Id*. at 2. Defendant Braddy further states that fourteen months after this email was sent, "without any new discovered evidence," the government filed the Superseding Indictment, which included heroin and cocaine offenses. *Id*. at 3. This indicates that the basis for this motion, the disparity of treatment and changes in drug crimes charged, occurred *prior to trial*. The original indictment was filed on April 15, 2014, (Doc. 57), and the Superseding Indictment was filed on June 9, 2015. (Doc. 389). The email was sent to defendant Horton after the original and before the Superseding Indictment. Thus, the basis of the motion was reasonably available to the defendants prior to trial. According to Rule 12(b)(3), then, this motion for vindictive prosecution *must have been made before trial*. Because the defendants failed to make the motion until now, after they have been tried and convicted, the court finds the motion untimely, and will deny it upon such ground.

The court further finds that the instant motion is also subject to dismissal on substantive grounds. "Prosecutorial vindictiveness may occur when the government penalizes a defendant for invoking legally protected rights." United States v. Schoolcraft, 879 F.2d 64, 67 (3d Cir. 1989) (citing United States v. Goodwin, 457 U.S. 368, 372 (1982); Bordenkircher v. Hayes, 434 U.S. 357, 363 (1978); Blackledge v. Perry, 417 U.S. 21, 28 (1974)). This can arise from actual vindictiveness, and can also arise if a

reasonable likelihood of vindictiveness exists warranting a presumption of vindictiveness. United States v. Esposito, 968 F.2d 300, 303 (3d Cir. 1992). In *United States v. Goodwin*, the United States Supreme Court held: "[f]or just as a prosecutor may forgo legitimate charges already brought in an effort to save the time and expense of trial, a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded." United States v. Goodwin, 457 U.S. 368, 380 (1982). A prosecutor's decision to add charges to a superseding indictment does not constitute actual vindictiveness, nor does it trigger the presumption of vindictiveness. *Id.* The Third Circuit has consistently applied the holding in *Goodwin* and further stated that "a prosecutor may charge a defendant with crimes bearing an increase in punishment in response to the defendant's rejection of a negotiated guilty plea," and in such instance there is no presumption of vindictiveness. United States v. Winkelman, 180 Fed. Appx. 397, 400 (3d Cir. 2006).[4] Therefore, applying United States Supreme Court

_____

[4] The court notes that the facts in *Winkelman* are similar and analogous to the facts in the instant case, and further support a finding that the Superseding Indictment was not a result of vindictive prosecution. In *Winkelman*, the defendants "were given proposed plea deals after lengthy negotiations between counsel in which the prosecution informed defense counsel that both . . . faced potentially significant weapons charges in addition to the narcotics charges. . . . After Appellants' refused the negotiated plea agreements, and the judge rescheduled trial once again, prosecutors continued questioning witnesses and gathering further evidence to support the weapons for narcotics trading scheme. The grand jury then returned the third superceding indictment containing these additional charges, trial ensued

and Third Circuit precedent, the government's decision to charge defendants Braddy and Horton with additional drug related charges in the Superseding Indictment, after both had rejected plea agreements, does not constitute actual vindictiveness, nor does it trigger a presumption of vindictiveness, and therefore the claim does not satisfy the requirements for a vindictive prosecution claim and must be denied.

Defendant Braddy's Motion for dismissal of the Superseding Indictment fails on substantive grounds as well as the previously discussed procedural grounds. Therefore, the court will **DENY** the motion.

## III.  Conclusion

For the foregoing reasons, the court finds that defendant Reginald Braddy is not entitled to a new trial because he waived his right to self-representation, and further finds that defendant Braddy's Motion to Dismiss

_____

and [defendants] were convicted. Both were free to accept negotiated plea deals, as had their seven codefendants, but chose otherwise. [Defendants] cannot convince us now that just because going to trial and challenging the additional charges, of which the jury found both guilty beyond a reasonable doubt, resulted in harsher punishment for them that they were vindictively prosecuted." United States v. Winkelman, 180 Fed. Appx. 397, 400-01 (3d Cir. 2006). Here, like *Winkelman*, defendants Braddy and Horton failed to enter into any plea agreements, and the Government made a prosecutorial decision to include additional drug related charges in the Superseding Indictment. Just as in *Winkelman*, we find that the Government's decision to add new charges in the Superseding Indictment does not lead to a presumption of vindictive prosecution.

the Superseding Indictment fails on both procedural and substantive grounds. Therefore, the court will **DENY** both the Motion for a New Trial, (Doc. 548), and the Motion to Dismiss the Superseding Indictment. (Doc. 549). An appropriate order shall follow.

S/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: July 7, 2016**

O:\Mannion\shared\MEMORANDA - DJ\CRIMINAL MEMORANDA\2014 CRIMINAL MEMORANDA\14-0104-01.wpd

19