**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| v. : | **Criminal No. 03-CR-14-104** |
| **REGINALD BRADDY,** : | **(JUDGE MANNION)** |
| and **FONTAINE HORTON,** | |
| : | |
| **Defendants** | |
| : | |

# MEMORANDUM

Before the court are defendants Reginald Braddy's and Fontaine Horton's Objections to their Presentence Reports ("PSR") regarding drug quantities. (Doc. 574, Doc. 594).[1] Braddy "objects to the controlled substance calculations in the pre-sentence report on the grounds that the calculations are not supported by the evidence and do not accurately reflect his involvement." Horton specifically claims that the drug quantities he was found responsible for distributing in the PSR are solely based on the testimonies of the co-conspirators involved in the drug trafficking organization, namely, Witness #1 (W-1), Witness #2 (W-2) and Witness #3 (W-3), and that the PSR does not list the correct amounts in light of their testimonies. He also argues that some of the drug amounts in the PSR which he has been found

---

[1]Braddy's Objections to his PSR are contained in the Addendum to the PSR, (Doc. 574). Horton filed a Memorandum in support of his Objections. (Doc. 594). Both defendants are represented by counsel. Since both defendants object to the amounts of drugs attributable to them in the PSR, the court addresses them jointly herein.

1

responsible for distributing should be attributable to his co-defendant, Braddy, who was the leader of the drug organization. Horton contends that the scope of Braddy's involvement in the drug conspiracy, as the leader of it, was greater than his and, that he should only be held responsible for the times he was directly paid for drugs and not the transactions between Braddy and the co-conspirators. Horton contends that if he is sentenced based on the correct drug quantities, his sentence will be below the minimum guideline range recommended in his PSR of 188-months imprisonment. Horton sets forth his own calculation of the amounts of each type of drug he believes he can be held responsible for distributing based on the evidence presented at trial. (Doc. 594).

For the reasons set forth below, the court will **OVERRULE** Braddy's and Horton's objections to their PSR.

## I. BACKGROUND

By way of relevant background, on April 15, 2014, defendants Braddy and Horton were charged in the original indictment along with five others for conspiracy to distribute or possess with intent to distribute methamphetamine. (Doc. 57). In the original indictment, Horton was also charged with two counts of distribution or possession with intent to distribute methamphetamine. *Id.* On June 9, 2015, defendants Braddy and Horton were both charged in a Superseding Indictment, (Doc. 389), with conspiracy to distribute or possess with intent to distribute methamphetamine, cocaine, and heroin. Additionally,

defendant Horton was charged with two counts of distribution or possession with intent to distribute methamphetamine.

Both defendants Braddy and Horton pled not guilty to all counts of the Superseding Indictment. (Docs. 402, 404). Only these defendants opted for a jury trial with respect to the charges against them. The trial was conducted May 23 through May 26, 2016, and the jury found defendants Braddy and Horton guilty on all counts. (Doc. 535).

The government has filed responses to the objections of both defendants. (Doc. 595, Doc. 608). Following consideration of Post-Trial motions, Braddy's sentence was scheduled for April 17, 2017. Horton's sentence will be scheduled shortly.

## II. DISCUSSION

Defendants Braddy's and Horton's arguments are based primarily upon the specific quantities of illicit drugs they were found responsible for distributing in the PSR. The U.S. Probation Officer calculated the sentencing guidelines for both defendants based upon "information provided by the government that included testimony from co-conspirators who were directly involved with the drug trafficking conspiracy." (Doc. 574). In Braddy's PSR, (Doc. 573, ¶ 53), his base offense level is calculated as follows:

> The guideline for a violation of 21 U.S.C. §846 is USSG §2D1.1. The instant offense also involved methamphetamine, cocaine, and heroin; and therefore, the drugs must be converted to marijuana by using the drug equivalency table which appears in the commentary to USSG §2D1.1. The offense involves at least

nine kilograms of methamphetamine [at least 18,000 kilograms of marijuana equivalent], at least 920.19 grams of cocaine [at least 184.03 kilograms of marijuana equivalent], and at least 80.87 grams of heroin [at least 80.87 kilograms of marijuana equivalent]. Because the offense involved at least 18,264.91 kilograms of marijuana, the base offense level is 34. USSG §2D1.1(a)(5).

In Horton's PSR, (Doc. 579, ¶ 55), his base offense level is calculated as follows:

> Base Offense Level: The guideline for violations of 21 U.S.C. §§846 and 841 is USSG §2D1.1. The instant offense also involved methamphetamine, cocaine, and heroin; and therefore, the drugs must be converted to marijuana by using the drug equivalency table which appears in the commentary to USSG §2D1.1. The base offense level is 34. USSG §2D1.1(a)(5).

With a two level adjustment for obstruction of justice, the PSR recommends for Horton an adjusted offense level of 36 and a criminal history category of I, resulting in a guidelines range of 188 to 235 months of imprisonment. For Braddy, a two level adjustment is made for his role in the offense as an organizer and leader and a two level adjustment is made for obstruction of justice. Thus, the PSR recommends for Braddy an adjusted offense level of 38 and a criminal history category of I, resulting in a guidelines range of 235 to 240 months of imprisonment.

In his Objections, (Doc. 594, at 5), Horton argues that the evidence presented at trial showed that he should only be responsible for the following amounts of drugs:

4

| Drug Name | Drug Quantity | Marijuana Equivalency |
|---|---|---|
| Methamphetamine | 2354.30 gms | 4708.00 kgs |
| Cocaine | 408.6 gms | 81.69 kgs |
| Heroin | 46.71 gms | 46.71 kgs |
| Total | | 4,836.40 kgs |

As such, Horton states that if the correct total of marijuana equivalency is utilized, his base offense level should be 32. Horton basically argues that he should only be held accountable for the quantity of drugs which the evidence directly linked him as distributing, and not for the quantity of drugs attributable to his co-conspirators. Nor should he be held accountable for the entire quantity of drugs involved in the conspiracy.

Braddy did not specify the amounts of drugs which he believes should be attributed to him. Rather, he generally objects to the amounts specified in the PSR claiming that those amounts are not supported by the evidence from the trial. Neither defendant objects to the types of drugs specified in the PSR.

The government contends that Braddy was the leader of the organization and that Horton was a central figure in the drug trafficking conspiracy, and that both defendants were "intimately involved in its day-to-day operations fully aware of its extent, and essential to its success." Thus, the government maintains that Braddy and Horton are both "responsible for the entire quantity of drugs that were distributed within the scope of the conspiracy, were distributed in furtherance of the conspiracy, and which were reasonably foreseeable that the conspiracy would distribute." (Doc. 595, at 2-

3, Doc. 608, at 2).

There is no dispute that Count 1 of the superseding indictment specifically charged Horton and Braddy with conspiracy to distribute and possess with intent to distribute methamphetamine, cocaine and heroin between January 1, 2012 and April 15, 2014. Additionally, Horton and Braddy were charged with conspiring "with each other and .... with other persons, known and unknown to the Grand Jury," to commit these offenses. Further, at trial, the jury made specific findings that the conspiracy between Horton and Braddy involved the distribution and possession with intent to distribute three controlled substances, to wit: methamphetamine; cocaine; and heroin. Horton was also found guilty of Counts 2 and 3 of the superseding indictment charging him with distribution and possession with intent to distribute methamphetamine on October 7, 2013, and on October 22, 2013.

Initially, the court can make factual findings regarding the quantities of drugs each defendant was responsible for distributing for purposes of their guidelines calculations without violating the Supreme Court's holding in Alleyne v. United States, —— U.S. ——, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013). "While the Supreme Court made clear that any fact that increases a defendant's statutory minimum sentence must be found by a jury beyond a reasonable doubt, this rule does not foreclose a district court's ability to engage in some judicial factfinding." U.S. v. Freeman, 763 F.3d 322, 335 (3d Cir. 2014) (citing Alleyne, 133 S.Ct. at 2158). The Third Circuit has agreed with the First, Sixth and Seventh Circuits which have held that "factual

6

findings made for purposes of applying the Guidelines, which influence the sentencing judge's discretion in imposing an advisory Guidelines sentence and do not result in imposition of a mandatory minimum sentence, do not violate the rule in *Alleyne*." Id. (citations omitted); *see also* U.S. v. Smith, 751 F.3d 107, 117 (3d Cir. 2014) ("*Alleyne* did not curtail a sentencing court's ability to find facts relevant in selecting a sentence *within* the prescribed statutory range.") (emphasis in original). As such, this court can make factual findings regarding drug quantities with respect to Braddy and Horton solely for purposes of determining their guidelines range "so long as the ultimate sentence imposed [is] within the statutorily prescribed range." Id. at 336 (Third Circuit held that district court could make factual findings regarding the amount of cocaine each defendant was responsible for solely for the purpose of imposing an advisory Guidelines sentence and not for the imposition of any mandatory minimum.). Under 21 U.S.C. §841(b)(1)(C), in the case of a controlled substance in schedule I or II, with no drug quantity finding, the maximum term of incarceration is 20 years (i.e., 240 months). Id.

In *Freeman*, the defendants also challenged "the adequacy of the District Court's factual findings regarding the quantity of drugs attributable to each of them." Id. at 336-37. Under the Guidelines, the court calculates the sentencing range for drug trafficking offenses based on the quantity of drugs involved in the offense. See U.S.S.G. §§2D1.1(a)(5) and 2D1.1(C). The calculation of the amount of drugs attributable to a defendant must be based on the defendant's "relevant conduct." U.S. v. Perez, 280 F.3d 318, 352 (3d

7

Cir. 2002); U.S. v. Parnell, 652 Fed.Appx. 117, 120 (3d Cir. 2016). As the government points out, (Doc. 608, at 3), "[r]elevant conduct in conspiracy cases includes 'all acts . . . of others that were –

(I) within the scope of the jointly undertaken criminal activity,

(ii) in furtherance of that criminal activity, and

(iii) reasonably foreseeable in connection with that criminal activity.'"

(citing U.S.S.G. §1B1.3(a)(1)(B); Parnell, 652 Fed.Appx. at 120; Perez, 280 F.3d at 352-53). As such, "in drug cases, 'the defendant is accountable . . . for all quantities of contraband with which he was directly involved and, . . . [for] all quantities of contraband that were involved in the transactions carried out by other participants,' so long as those transactions meet the three criteria spelled out above." (Id.) (citing U.S.S.G. §1B1.3, application note 3(D); Perez, 280 F.3d at 352-53; Parnell, 652 Fed.Appx. at 120).

In Freeman, 763 F.3d at 337, the Third Circuit explained:

The Federal Rules of Evidence do not apply in sentencing proceedings. Fed.R.Evid. 1101(d)(3). "This does not mean, however, that there is no threshold requirement for admissibility." United States v. Miele, 989 F.2d 659, 663 (3d Cir. 1993). "[I]n order to avoid 'misinformation of constitutional magnitude,'" United States v. Brothers, 75 F.3d 845, 848 (3d Cir. 1996) (quoting United States v. Sciarrino, 884 F.2d 95, 98 (3d Cir. 1989)), "we require that 'information used as a basis for sentencing under the Guidelines ... have sufficient indicia of reliability to support its probable accuracy.'" Id. (quoting Miele, 989 F.2d at 663); *see also* U.S.S.G. §6A1.3(a); United States v. Yeaman, 194 F.3d 442, 463 (3d Cir. 1993). "Indicia of reliability may come from, inter alia, the provision of facts and details, corroboration by or consistency with other evidence, or the opportunity for cross-examination." *See* United States v. Smith, 674 F.3d 722, 732 (7th Cir. 2012) (internal quotation marks and

8

citations omitted).

Thus, drug quantities determined by the sentencing court must be supported by a preponderance of the evidence and based on evidence, including evidence provided by credible witnesses, which has sufficient indicia of reliability to show its probable accuracy. Id. A sentence will be vacated if the district court fails to meet "the Guidelines' sufficient indicia of reliability standard" with respect to determining drug quantities. Id. "[T]his standard should be applied rigorously." U.S. v. Miele, 989 F.2d 659, 664 (3d Cir. 1993). Here, both defendants were charged and convicted of conspiracy to distribute methamphetamine, cocaine and heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 846. "To prove a conspiracy, the government must establish a unity of purpose between the alleged conspirators, an intent to achieve a common goal, and an agreement to work together toward that goal." U.S. v. Gibbs, 190 F.3d 188, 197 (3d Cir. 1999) (citation omitted). "[I]t is neither an element of 21 U.S.C. §846 nor a constitutional requirement that a defendant have committed an overt act in furtherance of the conspiracy." Id. at 197 n. 2 (citation omitted).

The drug quantities in the PSR attributable to each defendant is based on specific evidence detailed in the PSR which was presented at their trial. The Third Circuit has "recognized that in calculating the amount of drugs involved in a particular operation, a degree of estimation is sometimes necessary." Gibbs, 190 F.3d at 203 (citing U.S. v. Paulino, 996 F.2d 1541, 1545 (3d Cir. 1993) ("noting that the covert nature of the drug trade precludes seizure and precise measurement of the drugs that flow through a drug

distribution conspiracy); U.S.S.G. §2D1.1 application note 12 ("stating that the quantity of drugs can be estimated when no drug seizure occurs or the amount seized does not reflect the scale of the offense"). However, calculations regarding drug quantities "may not be based on mere speculation." U.S. v. Collado, 975 F.2 985, 998 (3d Cir. 1992).

Courts can estimate drug quantities based on a number factors such as "testimony by a co-defendant about the weight of drugs he and the defendant transported[,] and testimony about average amounts sold per day multiplied by length of time sold." Id. at 204. The court can also estimate the amount of drugs a defendant bought based on the trial testimony of a co-conspirator if it was reliable, not speculative, and if the co-conspirator demonstrated his experience and familiarity with drug transactions. *See* U.S. v. Boone, 279 F.3d 163 (3d Cir. 2002). Further, in U.S. v. Shepard, 219 Fed.Appx. 160, 162 (3d Cir. 2007), the Third Circuit permitted drug quantity determination based on the testimony and information provided by people who were intimately involved in the cocaine distribution conspiracy at issue, who were customers of the defendant charged with cocaine conspiracy, and who had observed various aspects of the drug operation.

Pursuant to §1B1.3(a)(1)(B), "[i]n the case of a jointly undertaken criminal activity," "a defendant is accountable for the conduct (acts and omissions) of others that was both: (I) in furtherance of the jointly undertaken criminal activity; and (ii) reasonably foreseeable in connection with that criminal activity." Perez. 280 F.3d at 353-54. No doubt that in a case involving

a drug conspiracy, the court cannot simply attribute the full amount of the drugs distributed in the conspiracy to a particular defendant. Rather, a defendant "is accountable for all quantities of contraband with which he was directly involved and, in the case of a jointly undertaken criminal activity, all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook." Id. at 354 (citations omitted).

The PSR for both defendants extensively detail very similar trial evidence which was used to determine the quantities of drugs each defendant was held responsible for distributing for purposes of obtaining a guidelines range for sentencing. (Braddy, Doc. 573, at 4-16; Horton, Doc. 579, at 5-17). The government's briefs also specify essentially this same evidence with citation to the defendants' trial transcript. (Doc. 608, at 11-24; Doc. 595, at 11-24). Nonetheless, the district court must identify the credible and reliable evidence in the record upon which it relies to make its drug quantity findings. U.S. v. Lopez-Esmurria, 629 Fed.Appx. 284 (3d Cir. 2015). The district court cannot simply and without question accept the calculated drug quantities stated in the PSR. Id.

At the outset, the court finds all of the trial witnesses identified in the PSR and the government's briefs, upon whose testimonies were partially used to calculate the drug quantities attributable to Braddy and Horton, to be credible based on its observation of these witnesses during the trial and based on the other overwhelming evidence in the record which substantiated their testimonies. Specifically, the court relies, in part, on the trial testimonies

11

of W-1, W-2 and W-3, to determine drug quantities for both defendants. Based on the court's recollection of these witnesses appearing at trial and based on its recent review of the trial transcript regarding their testimonies, it finds that the testimonies of these three witnesses to be credible and reliable with respect to the drug quantities involved in their transactions with Braddy and Horton. These witnesses demonstrated that they knew Braddy and Horton and, that they were very familiar with drug transactions.

The court has reviewed, the PSR, the government's briefs, defendants' Objections and Horton's brief, as well as the trial transcripts, (Doc. 556, Doc. 557, Doc. 558, Doc. 559), and finds that the specific amounts of drug quantities and drug types detailed in the PSR attributable to each defendant to be accurate and supported by the record. The court also relies on its independent recollection of the trial.

W-1's testimony is in the trial transcript found at Doc. 557, pp. 4-86. Sometime in 2013 (prior to September 30, 2013) W-1 bought 250 grams cocaine from Braddy for $10,000. W-1 bought 250 grams of cocaine and ½ ounce (14.17 grams) of heroin from Horton. Also, W-1 bought one ounce of crystal methamphetamine from Horton on two occasions (56.70 grams total) each time for $1,500. W-1 in turn provided the drugs to a woman and she would then sell the drugs. W-1 sold the meth to his own customers. However, some of the drugs W-1 bought from Braddy and Horton were seized by PA state police at the residence W-1 shared with the woman noted above on September 30, 2013 and the government submitted the state police lab

reports of the seized drugs which substantiated W-1's testimony.

Additionally, on October 7, 2013, W-1 agreed to make a controlled buy of one ounce of meth from Horton for $1,500. There were recorded calls between W-1 and Horton setting up the transaction and W-1 then, under police surveillance, bought the meth. Police weighed the meth later and it was 27.81 grams.

On October 22, 2013, W-1 agreed to make another controlled buy of one ounce of meth from Horton for $1,500. There were recorded calls between W-1 and Horton setting up the transaction and W-1 then, under police surveillance, bought the meth. Police weighed the meth later and it was 27.61 grams.

In November 2013, W-1 agreed to make a third controlled buy of one ounce of meth from Horton for $1,500. There were several text messages between W-1 and Horton setting up the transaction. Horton instructed W-1 to mail him the money which police did to the address provided. In December 2013, W-1 was directed by Horton to a place to pick up his meth and he drove there under police surveillance, and retrieved the meth. Police weighed the meth later and it was 27.48 grams.

W-2's testimony is found at Doc. 557, pp. 111-139. W-2 stated that the drugs which were seized from him on October 23, 2013 by county detectives were all bought from Horton, namely, 11.81 grams of heroin, 2.16 grams of cocaine and 1.01 grams of meth. These drugs were confiscated and weighed by the detectives. W-2 stated that he bought cocaine from Horton 5 or 6

times, he bought meth 10 to 12 times from Horton, and he bought heroin from Horton about 6 times. In its brief, the government notes that during debriefing W-2 indicated that he bought the heroin and cocaine from Horton in ½ ounce quantities and the meth in quantities of 20 grams to 1 ounce at a time. (Doc. 595, at 18). The government calculates the total amounts per drug as follows: heroin, 85.02 grams; cocaine 70.85 grams; and meth, 200 grams. The court finds these calculations to be accurate and supported by W-2's testimony as well as the text messages which the government submitted at trial.

    W-3's trial testimony is found at Doc. 558, pp. 3-83. W-3 was a named co-conspirator of Braddy and Horton in Count 1 of the superseding indictment and had previously pled guilty to conspiring with the two defendants as well as others to distribute meth. In his plea agreement, which was a government exhibit, W-3 admitted that he conspired to distribute in excess of 1.5 kilograms and less than 5 kilograms of meth. W-3 also testified that over the course of his relationship with Braddy he purchased methamphetamine approximately "20, 25, 30 times" and that his typical purchase amount was one pound. As the government indicates in its brief, (doc. 595, at 22), using only 20 purchases of one pound each, W-3 stated that he bought the equivalent of a total of 9 kilograms of meth from Braddy. W-3 also bought cocaine 5 or 6 times and heroin 4 or 5 times from Braddy and Horton. During debriefing, the government notes that W-3 stated that he bought cocaine from defendants in the amounts of 1 to 2 ounces at a time. (Id. at 23 n. 4). The government correctly calculates the amount of cocaine using only 5

14

purchases @ 1ounce each to be a total of 141.75 grams cocaine. The quantity of heroin W-3 bought from defendants could not be accurately determined so this amount is not used for the guidelines calculations for either defendant.

In summary, the court finds that the government's brief, (Doc. 595, at 24), accurately charts the quantities and the types of drugs for which Braddy and Horton are responsible based on the testimony of its trial witnesses, detailed by the court above, as follows:

Methamphetamine = 139.60 grams (W-1) + 200 grams (W-2) + 9000 grams (i.e. 9 kilograms) (W-3) = 9339.60 grams

Cocaine = 500 grams (W-1) + 70.85 grams (W-2) + 141.74 grams (W-3) = 712.60 grams

Heroin = 14.17 grams (W-1) + 85.02 grams (W-2) = 99.19 grams

Using the above quantities and drugs types, the government, (Doc. 595, at 25), converts the results attributable to both Braddy and Horton in the following marijuana equivalency:

Methamphetamine = 18,679 kilograms of marijuana

Cocaine =142.52 kilograms of marijuana

Heroin = 99.19 kilograms of marijuana

When these amounts are added up they result in a total marijuana equivalency of 18,920.91 kilograms. The PSR for both defendants states that the total marijuana equivalency is 18,264.91 kilograms, which is slightly lower than the government's figures. The discrepancy is of no moment since both amounts result in a base offense level for Braddy and Horton of 34 pursuant

to U.S.S.G. §2 D1.1. Nonetheless, the court will adopt the more favorable findings to the defendants found in the PSR regarding drug quantities.

"[A] sentence in a criminal conspiracy is based upon all relevant conduct and not merely offense conduct." Boone, 279 F.3d at 177 (citing U.S. v. Rivera–Maldonado, 194 F.3d 224, 228 (1st Cir. 1999) ("Since defendant was convicted of conspiring to distribute controlled substances, she is responsible for all 'drugs [she] personally handled or anticipated handling, and, under the relevant conduct rubric, for drugs involved in additional acts that were reasonably foreseeable by [her] and were committed in furtherance of the conspiracy.'"). "[A]ll of [the defendants'] drug-trafficking that was part of the same course of conduct or common scheme must be included in the drug quantity." Id. at 178. Based on all of the relevant conduct contained in the record produced at trial, the court shall accept the sentencing guideline range specified in the PSR for both Braddy, i.e., 235 months to 240 months imprisonment, and Horton, 188 months to 225 months imprisonment.

## III. CONCLUSION

The court finds, for purposes of determining their applicable Guidelines ranges, that Braddy and Horton were responsible for the total marijuana equivalent of 18,264.91 kilograms. The sentences that will be imposed for both defendants will be within the 20-year statutory maximum term permissible under §841(b)(1)(C), which is supported by the jury's verdict. Further, as the *Freeman* Court instructed, this court will not rely "on any

sentencing minimum other than that prescribed by § 841(b)(1)(C)." Freeman, 763 F.3d at 336. (In Freeman, the Court found that "there [was] no indication in the record that the District Court believed that its sentencing discretion was confined to a higher statutory minimum given its drug quantity findings.').

Therefore, the court will **DENY** Braddy's and Horton's Objections to their respective PSR based on drug quantities. An appropriate order shall follow.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: April 14, 2017**
O:\Mannion\shared\MEMORANDA - DJ\CRIMINAL MEMORANDA\2014 CRIMINAL MEMORANDA\14-0104-02.wpd