**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **REGINALD BRADDY,** : | |
| : | |
| **Petitioner** : | **Criminal No. 03-CR-14-104** |
| **v.** : | **(JUDGE MANNION)** |
| **UNITED STATES OF AMERICA,** : | |
| : | |
| **Respondent** | |

## <u>MEMORANDUM</u>

Pending before the court is petitioner Reginald Braddy's ("Braddy") Motion to Vacate, Set Aside or Correct Sentence, filed on April 30, 2018. (Doc. 632). The petitioner's motion is filed pursuant to <u>28 U.S.C. §2255</u> and is based upon ineffective assistance of counsel claims. For the reasons discussed below, the court will **DENY** the motion without the need for an evidentiary hearing.

## I.   BACKGROUND[1]

Following a 4-day trial from May 22 - 26, 2016, a jury found Braddy, and his co-defendant Fontaine Horton, guilty on all counts of a Superseding Indictment, (Doc. 402), charging him with drug related offenses.

---

[1]Since the court has previously stated the facts and background of Braddy's case in its July 7, 2016 Memorandum, (Doc. 554), as well as in its April 14, 2017 Memorandum, (Doc. 609), and since the parties state them in their instant filings, there is no reason to fully repeat them herein. (*See also* Doc. 627-1, Opinion of Third Circuit).

Subsequently, Braddy filed a Motion for a New Trial, (Doc. 548), as well as a Motion to Dismiss the Superseding Indictment. (Doc. 549). On July 7, 2016, the court issued a Memorandum, (Doc. 554), and Order, (Doc. 555), denying both of Braddy's Motions. The court then conducted a sentencing hearing and sentenced Braddy to 235 months in prison. (Doc. 612). Braddy filed a timely notice of appeal. On December 6, 2017, the Third Circuit affirmed Braddy's conviction and sentence. *See* United States v. Braddy, 2017 WL 6033419 (3d Cir. 2017).

On April 30, 2018, Braddy timely filed his instant Motion to Vacate, Set Aside, or Correct his sentence pursuant to 28 U.S.C. §2255. (Doc. 632). Braddy's motion has been fully briefed by the parties.

## II.  STANDARD

When a district court judge imposes a sentence on a defendant who believes "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, [the defendant] may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. §2255, ¶1; *see* United States v. Eakman, 378 F.3d 294, 297-98 (3d Cir. 2004).

The rule states that "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not

2

entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party." *See* United States v. Bendolph, 409 F.3d 155, 165 n. 15 (3d Cir. 2005) (stating district courts have the power to dismiss petitions *sua sponte* during the Rule 4 stage of habeas proceedings).

A §2255 motion "is addressed to the sound discretion of the district court." United States v. Williams, 615 F.2d 585, 591 (3d Cir. 1980). "[A] motion under 28 U.S.C. §2255 is the proper procedure for a federal prisoner to raise a collateral attack on his or her federal sentence for any error that occurred at or prior to sentencing." Paulino v. U.S., 2010 WL 2545547, *2 (W.D.Pa. June 21, 2010) (citations omitted). "In order to prevail on a §2255 motion to vacate, set aside, or correct a sentence, a Petitioner must show '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" U.S. v. Bates, 2008 WL 80048, *2 (M.D.Pa. Jan. 7, 2008) (quoting Mallet v. U.S., 334 F.3d 491, 496-97 (6th Cir. 2003)). "The petitioner bears the burden of proof under §2255 and must demonstrate his right to relief by a preponderance of the evidence." U.S. v. Ayers, 938 F.Supp.2d 108, 112 (D.D.C. 2013) (citation omitted). Braddy's instant claims fall within the purview of §2255 since they challenge the effectiveness of his counsel. Bates, 2008 WL 80048, *3 ("Claims of ineffective assistance of counsel may be brought in the first instance by way of a §2255 motion regardless of whether the movant could have asserted the claim on direct appeal.") (citing Massaro v. U.S., 538 U.S. 500, 504, 123 S.Ct. 1690

(2003)).

Additionally, "Section 2255 does not afford a remedy for all errors that may have been made at trial or during sentencing", "[r]ather, Section 2255 is implicated only when the alleged error raises 'a fundamental defect which inherently results in a complete miscarriage of justice.'" Williams v. United States, 2016 WL 6892375, *2 (M.D.Pa. Nov. 22, 2016) (internal citations omitted).

The Sixth Amendment to the United States Constitution guarantees a criminal defendant "the assistance of counsel for his defense." U.S. Const. amend. VI. The U.S. Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984) established a two-prong test to evaluate the effectiveness of the assistance of counsel. In the first prong, the defendant must show "that counsel's performance was deficient," id., 687, and must prove this by "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. In addition, the defendant must show that "counsel's representation fell below an objective standard of reasonableness." Id., 687-88.

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered

4

sound trial strategy.

Id., 689.

In the second prong, a defendant must show that counsel's deficient performance "prejudiced the defense," because "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., 687. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, cf. United States v. Valenzuela–Bernal, 458 U.S. 858, 866–867 (1982), and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Id., 693. Rather, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., 694. Thus, to state a successful claim for ineffective assistance of counsel, petitioner must show "both that counsel's performance was deficient, and that the deficiency prejudiced the defense." Wiggins v. Smith, 539 U.S. 510, 521, 123 S.Ct. 2527 (2003). "A failure to make the required showing on either prong defeats a defendant's ineffective assistance of counsel claim." Ayers, 938 F.Supp.2d at 113 (citing in Strickland, 466 U.S. at 700).

## III.   DISCUSSION

This court has jurisdiction over Braddy's motion under §2255 pursuant

to pursuant to [28 U.S.C. §§1331](#) and [2241](#).

In his §2255 Motion, Braddy raises six claims, essentially alleging that his counsel rendered ineffective assistance during his trial and his appeal. The court will address Braddy's claims *seriatim*.

### 1. Claim One

Braddy claims that his trial counsel was ineffective for failing to argue that the district court violated his right to self-representation and that the court failed to conduct a *Faretta* inquiry. Braddy also contends that his appellate counsel was ineffective for failing to raise the issue regarding his right to self-representation in his appeal.

In its July 7, 2016 Memorandum, (Doc. 554), the court thoroughly discussed Braddy's claim that he was entitled to a new trial because he was deprived of his Sixth Amendment right to self-representation. (Doc. [548](#)). In his instant motion, as in his motion for a new trial, Braddy argues that he requested to represent himself, but the court failed to conduct a *Faretta* inquiry to determine whether or not he properly waived his right to counsel.[2] *See* [Faretta v. California, 422 U.S. 806, 819 (1975)](#).

In the context of his motion for a new trial, the court denied Braddy's motion on the Sixth Amendment ground. The court, found, after an extensive

---

[2]The court does not repeat its full discussion regarding Braddy's claim that he was deprived his right to self-representation which was contained in its July 7, 2016 Memorandum, (Doc. 554 at 3-14), and it incorporates it herein by reference.

analysis, that Braddy's Sixth Amendment right to self-representation was not violated. Now, Braddy is basically trying to re-litigate the same issue only couched in terms of an ineffective assistance of counsel claim. As the government points out, "[i]neffective assistance of counsel claims cannot be used to indirectly challenge prior rulings [in a case]." In <u>United States v. Green</u>, 2016 WL 11201635, \*3 (E.D.Pa. Dec. 9, 2016), the court stated that "Section 2255 generally may not be employed to relitigate questions which were raised and considered on direct appeal," as those claims have been decided as a matter of law." (citing <u>United States v. DeRewal</u>, 10 F.3d 100, 105 n.4 (3d Cir. 1993) (Third Circuit noted that post-conviction motion to vacate sentence could not be used to re-litigate questions that were "raised and considered" on direct appeal or in motion for new trial); <u>United States v. Orejuela</u>, 639 F.2d 1055, 1057 (3d Cir. 1981) ("Once a legal argument has been litigated and decided adversely to a criminal defendant at his trial and on direct appeal, it is within the discretion of the district court to decline to reconsider those arguments if raised again in collateral proceedings under 28 U.S.C. §2255.")). Further, Braddy cannot use his "§2255 motion as a vehicle for contesting portions of the district court's decision [denying his motion for a new trial]." <u>United States v. DeRewal</u>, 10 F.3d at 105 n.4. The court also notes that Braddy could have raised his Sixth Amendment claim in his direct appeal to the Third Circuit but did not do so. (*See* Doc. 627-1).

Since this court has already decided and found no merit to Braddy's claim that his constitutional right to self-represetatnion was violated, "the court

will not consider th[is] argument[] anew, and th[is] claim[] for relief will be denied." Green, 2016 WL 11201635, *3. *See also* United States v. Orejuela, 639 F.2d 1055, 1057 (3d Cir. 1981) ("Once a legal argument has been litigated and decided adversely to a criminal defendant at his trial and on direct appeal, it is within the discretion of the district court to decline to reconsider those arguments if raised again in collateral proceedings under 28 U.S.C. §2255.").

### 2. Claim Two

As his second claim, Braddy contends that his trial and appellate counsel were ineffective for failing to object/raise "the government's consistent and repeated manipulation or misstatements of the evidence during closing argument" violating his right to a fair trial.

Braddy contends, in part, that the prosecutor misstated the testimony of the government's witnesses, Omar Moate, regarding his alleged purchase of cocaine from Braddy, and Eric Rabb, regarding a conversation with Braddy about drug trafficking. Braddy also contends that the prosecutor misstated the testimony of DEA officer Michael Sciarillo about Braddy's contacts with Horton.

Braddy cannot establish prejudice resulting from his claim regarding his counsel's failure to object during the government's closing since, as the government indicates, this court "instructed the jury that the statements [and arguments] of counsel [for both parties] were not evidence and that the juror's

recollection of the evidence controlled their decision in the case." (citing N.T. 5/26/16 p. 6-8; Doc. 537, p. 5-9). Specifically, the court instructed that "[a]lthough the lawyers may have called your attention to certain facts or factual conclusions that they thought were important, what the lawyers said is not evidence and is not binding on you. It is your own recollection and interpretation of the evidence that controls your decision in this case." The government also points out that the court instructed the jury "that they alone must decide what reasonable inferences to draw, based on all of the evidence, their experience and their common sense." (citing *Id.* p. 9-10; Doc. 537, p. 11-12). No doubt that the jury is presumed to follow the court's instructions. *See* Greer v. Miller, 483 U.S. 756, 765-66, 107 S.Ct. 3102 (1987). The prosecutor also told the jury in his closing that it was their recollection that controls and not his.

Additionally, "even if the prosecutor's statements were perceived improperly by the jury, the trial court's instructions were sufficient to cure this confusion and clarify the jurors' role." Sneed v. Beard, 328 F.Supp.3d 412, 433 (E.D.Pa. 2018).

Moreover, the prosecutor did not make any improper statements in his closing by arguing inferences that the jury could find based on the facts which were supported by the evidence and, Braddy's counsel cannot be found ineffective for failing to raise a meritless objection at trial or a meritless claim on appeal. *See* United States v. Angell, 256 F.Supp.3d 557, 561 (E.D.Pa. 2017).

Further, "[i]t is not enough to prove that the prosecutor's remarks were 'undesirable or inappropriate,' or even 'universally condemned,' the petitioner must show that he was denied a fair trial." Howard v. Horn, 56 F.Supp.3d 709, 726 (E.D.Pa. 2014) (internal citations omitted). Even assuming *arguendo* that the prosecutor made improper statements, the evidence was so overwhelming against Braddy during the four-day trial, reflected by the fact that the jury found him guilty on all charges in less than an hour, that he cannot demonstrate any prejudice or the denial of a fair trial. (*See also* Doc. 627-1). As such, even if Braddy's counsel erred by not objecting to the prosecutor's closing argument, there is no reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." United States v. Shedrick, 493 F.3d 292, 299 (3d Cir. 2007).

Thus, Braddy's ineffective assistance of counsel claim concerning the failure of his counsel to object during closing argument, and to raise this issue on appeal, will be denied since he cannot establish any prejudice. *See* Green, 2016 WL 11201635, *4 (holding that Strickland, 466 U.S. at 697 "permitted denial of an ineffective assistance of counsel claim solely on a finding of no prejudice").

### 3. Claim Three

As his third claim, Braddy contends that his trial and appellate counsel were ineffective for "failing to object/raise the issue" that "the government violated [his] right to a fair trial by using/failing to correct knowingly false

testimony." Braddy thus maintains that he was deprived of his right to a fair trial by prosecutorial misconduct due to the government's alleged knowing use of false testimony.

Braddy appears to be referring to the testimony of two of the government witnesses at trial, namely, Eric Rabb and Scott Borushak, a co-conspirator. As the government explains:

> Regarding Eric Rabb, Braddy attempts to point out his perceived discrepancies between Rabb's previous grand jury testimony and Rabb's trial testimony. Similarly, regarding Scott Borushak, Braddy attempts to point out his perceived inconsistencies between Borushak's trial testimony and Borushak's out-of-court statements set forth in DEA reports concerning a number of interviews Borushak provided to DEA investigators.

"A petitioner may qualify for federal habeas relief if acts of prosecutorial misconduct 'so infect[ed] the trial with unfairness as to make the resulting conviction a denial of due process.'" Howard v. Horn, 56 F.Supp.3d 709, 726 (E.D.Pa. 2014) (citation omitted). "To constitute a due process violation, 'the prosecutorial misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a trial.'" Id. (citation omitted). Further, "[t]o evaluate whether a prosecutor's misconduct rose to the level of a constitutional violation, a court must examine the prosecutor's conduct in the context of the whole trial." Id. (citing Reid v. Beard, 420 Fed.Appx. 156, 159 (3d Cir. 2011) ("A reviewing court must 'examine the prosecutor's offensive actions ... [by] assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant.'"). As such, "the misconduct must be sufficiently prejudicial in the context of the entire trial

as to violate a petitioner's due process rights." *Id.* at 727 (citation omitted).

"To prevail on a Section 2255 motion asserting allegations of prosecutorial misconduct based on the presentation of false evidence or solicitation of false testimony, the petitioner must demonstrate that: (1) the evidence at issue was false; (2) the prosecution knew it was false; and (3) the false evidence was material to the outcome of the trial." Williams, 2016 WL 6892375, \*5 (citations omitted). "[M]ere inconsistencies in testimony fall short of establishing perjury and most certainly do not establish that the government knowingly utilized perjured testimony." United States v. Thompson, 117 F.3d 1033, 1035 (7th Cir. 1997). Thus, as the government states, "Braddy's 'reliance on the alleged inconsistent nature of the witnesses' statements does not establish that the testimony . . . . was actually perjured.'" (citing Shiloh v. Wilkes, 2015 WL 5342704, \*12 (M.D.Pa. 2015)). As such, Braddy's counsel was not ineffective for failing to make a baseless objection and to raise a baseless claim regarding the testimony of Rabb and Borushak. Further, the trial strategy of both Braddy's counsel and Horton's counsel was to conduct a thorough cross-examination of Rabb and Borushak. As the government represents, "Borushak, ..., was vehemently cross-examined regarding alleged inconsistencies between his trial testimony and the contents of a letter which Borushak sent to Braddy while Braddy was in prison." (citing N.T., 5/25/16 at pp. 58-70).

The government also notes that Braddy testified that he had drug dealings with Borushak claiming that he only supplied Borushak with medical

marijuana and that he did not provide Borushak with methamphetamine, cocaine and heroin. (citing N.T., 5/25/16 at pp. 125-128, 130-133). It is clear that the jury did not find Braddy's testimony credible and that the evidence against Braddy demonstrating his drug trafficking activities was significant.

Further, there is no evidence that the prosecutor knew or should have known that the testimony of Rabb and Borushak was actually false, and that he then knowingly used false testimony. *See* Reynolds v. United States, 2012 WL 12981962, *6 (M.D.Pa. Aug. 15, 2012) ("[T]he presentation of the false statement must be willful", and "[d]iscrepancy is not enough to prove perjury.") (citations omitted).

Thus, the court finds no merit to Braddy's third ineffective counsel.[3]


### 4. Claim Four

As his fourth claim, Braddy contends that his trial and appellate counsel were ineffective "for failing to object/raise the issue" that "the statements supporting the PSR and the District Court's drug quantity findings are unsupported by sufficient indicia of reliability."

Although Braddy claims that his counsel was ineffective for failing to object to the drug quantity calculations contained in his Presentence Report

---

[3]The court also notes that "[t]o the extent [Braddy] raises an independent claim based on prosecutorial misconduct, this claim is procedurally defaulted because it was not raised on direct appeal [to the Third Circuit], [*see* Doc. 627-1] and [Braddy] cannot establish cause and prejudice to excuse the default as the underlying claim is meritless." Angell, 256 F.Supp. 3d at 561 n. 15.

("PSR") prior to his sentencing, the record shows that his counsel did in fact file objections to the PSR in this regard. Specifically, on October 7, 2016, Braddy's counsel sent a letter to the Probation Office stating that Braddy "objects to the controlled substance calculations in the [PSR] on the grounds that the calculations are not supported by the evidence and do not accurately reflect his involvement" and, his objections to the PSR were then reflected in the Addendum to the PSR. (Doc. 574). The government then responded to Braddy's objection to the PSR. (Doc. 608). On April 14, 2017, the court issued a Memorandum, (Doc. 609), and after a through review of the evidence presented at trial, it overruled Braddy's objections to the PSR. As the court explained in its Memorandum, its drug quantity determinations pertaining to Braddy were overwhelmingly supported by the evidence.

In his direct appeal to the Third Circuit, Braddy also challenged his sentence and the Court affirmed the district court's finding with respect to the quantities of drugs which were attributable to him as part of the drug trafficking conspiracy. (Doc. 627-1).

Based on the foregoing, Braddy's trial and appellate counsel were not ineffective since his trial counsel objected to the PSR and Braddy fails to meet his burden of showing his counsel's performance was deficient.

Further, the court, in its discretion, will not consider Braddy's fourth claim since it was already litigated and the court determined the drug quantity amounts for which Braddy was accountable, despite his counsel's objections, and sentenced him accordingly. Braddy's sentence was then affirmed on

14

appeal. *See also* Reynolds v. United States, 2012 WL 12981962, *3 (M.D.Pa. Aug. 15, 2012) ("[I]neffective assistance of counsel claims cannot be used to indirectly challenge prior rulings in [the] case.") (citations omitted).

### 5. Claim Five

As his fifth claim, Braddy contends that his trial and appellate counsel were ineffective for failing to object to, and to raise on appeal, the statements presented at trial, through the testimony of Moate and Borushak, from his deceased uncle and co-conspirator, Nate Renfroe, as hearsay. The government argues that Braddy's counsel was not ineffective since Renfroe's statements were not subject to exclusion under Rule 801(d)(2)(E) as hearsay based on the evidence it presented which laid the proper foundation for the admissibility of the statements.

In Alicea v. United States, 100 F.Supp.3d 457, 472 (E.D.Pa. 2015), the court explained:

> Rule 801(d)(2)(E) provides that "a statement made by a coconspirator of a party during the course and in furtherance of that conspiracy" is not hearsay and may be admitted as evidence against a coconspirator. For a court to admit the coconspirator statements, it must appear (1) that a conspiracy existed; (2) that the declarant and the defendant were both members of the conspiracy; (3) that the statements were made in the course of the conspiracy; and (4) that the statement was made in furtherance of the conspiracy. Bourjaily v. United States, 483 U.S. 171, 175, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987); United States v. McGlory, 968 F.2d 309, 333–34 (3d Cir. 1992). In *Bourjaily*, the Supreme Court held that factual predicates necessary for determining the admissibility of hearsay evidence under Rule 801(d)(2)(E) must be established by a preponderance of the

evidence. *See* 483 U.S. at 175–76, 107 S.Ct. 2775.

In its brief in opposition, (Doc. 636 at 30), the government states that "[its] witness Omar Moate testified that he knew an individual named Nate Renfroe and had purchased cocaine from Renfroe" and, that "Moate was then asked the following: Q: Did Nate Renfroe ever tell you about his nephew Reggie Braddy? A: Yes. Q: What did he [Renfroe] tell you about him [Braddy]?" (citing Moate testimony, 5/24/16 at p.9).

Braddy's counsel then objected to the prosecutor's question about Renfroe's statement and the court conditionally overruled the objection "subject to evidence at some point [by the government] that a conspiracy existed and that Renfroe and Braddy were conspirators in the case", as required by FRE 801(d)(2)(E).

In his answer to the above stated question, the government indicates that "Moate testified that Renfroe stated that Renfroe could obtain – and Moate could purchase –cocaine, crystal methamphetamine, 'any type of drug I want,' from Renfroe's nephew Reggie Braddy." (citing Moate testimony, 5/24/16 at p. 9-10).

As the government details in its brief, (Doc. 636 at 31-33), it established by a preponderance of the evidence that above stated four *Bourjaily* requirements were met in support of the admissibility of the hearsay statements under Rule 801(d)(2)(E) raised in the testimony of Moate and Borushak. At trial, the court also found that the government met the *Bourjaily* requirements. Further, since the court has previously discussed the evidence

supporting Braddy's conviction of conspiracy to distribute and possess with intent to distribute methamphetamine, cocaine and heroin in its July 7, 2016 Memorandum, (Doc. 554), and in its April 14, 2017 Memorandum, (Doc. 609), the court will not repeat it herein.

Braddy fails to point to any evidence which contradicted the government's evidence outlined in its brief which established each of the *Bourjaily* factors with respect to the admission of Moate's and Borushak's challenged testimony. Further, as stated, Braddy's counsel objected to the testimony about Renfroe's statements. As such, "[Braddy's] counsel cannot be ineffective because the Court properly admitted this evidence over objection." Alicea, 100 F.Supp. 3d at 473.

### 6. Claim Six

As his last claim, Braddy contends that his trial and appellate counsel were ineffective for "failing to object/raise the issue" regarding the fact that he was "shackled" with "leg restraints" during the trial.

Braddy contends that he was "visibly shaked (sic) (leg restraints) in front of the jury during trial." No doubt that "[t]he Supreme Court has held that the use of shackles visible to the jury during a criminal trial, without justification found by the Court, violates a defendant's due process rights." Sodano v. United States, 2017 WL 4618754, *3 (D.N.J. Oct. 16, 2017) (citing Deck v. Missouri, 544 U.S. 622, 629 (2005)).

As the government points out, there is simply no evidence that the jury

saw the leg shackles on Braddy during the trial based on where he was seated at defense counsel's table in relation to the jury box as well as the design of the table with its side panels. Prior to Braddy's testimony, the shackles were removed before the jury returned to the courtroom. At no time during the trial, did Braddy walk in front of the jury with the shackles on his legs. Braddy remained at counsel's table when the jury came into the courtroom and when the jury left. In <u>Sodano</u>, 2017 WL 4618754, *3, the court held that defendant's counsel was not ineffective for not objecting to the use of shackles during trial, since "they were not visible to the jury and therefore did not violate the Constitution." The court in <u>Sodano</u>, id., stated that "the Third Circuit has held that the use of shackles does not violate the Constitution, even absent just cause, if care was taken to ensure that the shackles were never visible to the jury." (citing <u>United States v. Tagliamonte</u>, 340 Fed.Appx. 73, 80 n.6 (3d Cir. 2009)). Thus, Braddy's counsel was not ineffective for failing to make a baseless objection and to raise a baseless claim regarding the use of shackles since the law was clear that "only visible shackles pose constitutional issues." *Id.*

Additionally, Braddy fails to show that he was in any way prejudiced by his counsel's failure to object to the shackles, especially since Braddy could clearly participate in his defense and communicate with his counsel at all times during trial and, the shackles did not impede his right to access to the court. Further, in light of the overwhelming evidence of Braddy's guilt presented at trial, further demonstrated by the very short time that the jury

deliberated, it is clear that the shackles played no role in the jury's verdict.

As such, the court's finds no merit to Braddy's unsubstantiated claim that his trial and appellate counsel were ineffective for failing to object to, and raise on appeal, his leg shackles which were not visible to the jury. *See* Daniels v. Overmyer, 2016 WL 3077356 (M.D.Pa. June 1, 2016) (court held that conclsuory claim by habeas petitioner that his counsel was ineffective for failing to object to shackles, with no showing of prejudice, was not sufficient to warrant relief).

## IV. EVIDENTIARY HEARING

Although Braddy does not specifically request an evidentiary hearing, the court will address the issue because the government raises it in its brief. "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States Attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. §2255(b). *See* United States v. Day, 969 F.2d 39, 41-42 (3d Cir. 1992)(The court is required to conduct an evidentiary hearing to ascertain the facts "unless the motion and files and records of the case show conclusively that the movant is not entitled to relief.")(citation omitted). However, the court need not accept the petitioner's allegations as true if they "are unsupported by specifics [or] wholly incredible in the face of the record.") Patton v. United States, 2010 WL 3191887, *1 (W.D. Pa. 2010) (citing United

19

States v. Estrada, 849 F.2d 1304,1307 (10th Cir. 1988)). A review of the motion and the briefs of the parties, the law, and the claims make it clear that Braddy's allegations are wholly unsupported by the record. Therefore, the court finds no reason to hold an evidentiary hearing.

## V. CERTIFICATE OF APPEALABILITY

A petitioner may not file an appeal from a final order unless a district or circuit judge issues a certificate of appealability ("COA") pursuant to 28 U.S.C. §2253(c). A COA shall not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). The petitioner must show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003); *see also* Slack v. McDaniel, 529 U.S. 473, 484 (2000). Here, a COA will not issue because Braddy has shown neither the denial of a constitutional right nor that jurists of reason would disagree with this court's resolution of his claims.

## VI. CONCLUSION

Based on the foregoing, the court finds Braddy fails to show his counsel was ineffective or deficient in any way. Therefore, the court **DENIES** Braddy's §2255 Motion. (Doc. 632). An appropriate order shall follow.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: February 6, 2019**

O:\Mannion\shared\MEMORANDA - DJ\CRIMINAL MEMORANDA\2014 CRIMINAL MEMORANDA\14-0104-03.wpd