**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

**REGINALD BRADDY,**                        :

                                            :

            **Petitioner**          **Criminal No. 03-CR-14-104**

  **v.**                                  :

                                            **(JUDGE MANNION)**

**UNITED STATES OF AMERICA,**               :

                                            :

       **Respondent**

## <u>MEMORANDUM</u>

Pending before the court is petitioner Reginald Braddy's ("Braddy")
Motion to Vacate, Set Aside, or Correct Sentence, filed on April 30, 2018.
(Doc. 632). Braddy's motion is filed pursuant to 28 U.S.C. §2255 and his
remaining claim is based upon alleged ineffective assistance of appellate
counsel for failing to argue on direct appeal that the trial court violated his
right to self-representation. Specifically, Braddy claims that his appellate
counsel was ineffective for two reasons. First, appellate counsel did not raise
the issue on direct appeal that the trial court committed error by failing to
hold a <u>Faretta</u> hearing on Braddy's request to represent himself. Second,
appellate counsel did not raise the issue that Braddy's statutory and
constitutional right was violated when the trial court did not allow him to
represent himself. For the reasons discussed below, after appointing Braddy

1

counsel and conducting an evidentiary hearing on June 7, 2021, and after the filing of supplemental briefs, the court will **DENY** the motion.

## I.    BACKGROUND[1]

On June 9, 2015, Reginald Braddy and his co-defendant Fontaine Horton were both charged in a Superseding Indictment, (Doc. 389), with conspiracy to distribute or possess with intent to distribute methamphetamine, cocaine, and heroin. Additionally, Horton was charged with two counts of distribution or possession with intent to distribute methamphetamine.[2] Both Braddy and Horton pled not guilty to all counts of the Superseding Indictment. (Docs. 402, 404).

_____

[1] Since the court has previously stated the relevant facts and background of Braddy's case in its July 7, 2016 Memorandum, (Doc. 554), in its April 14, 2017 Memorandum, (Doc. 609), as well as in its February 6, 2019 Memorandum, (Doc. 653), and since they were stated in the Third Circuit's December 6, 2020 Opinion, U.S. v. Braddy, 837 Fed.Appx. 112 (3d Cir. 2020), there is no reason to fully repeat them herein. (S*ee also* Doc. 627-1, Opinion of Third Circuit).

[2] As a backdrop, the government explains, (Doc. 667 at 13):

On April 15, 2014, a grand jury sitting in Scranton issued an indictment charging Fontaine Horton, Reginald Braddy and five other co-defendants with conspiracy to distribute methamphetamine (Count 1). (Doc. 57). The indictment also charged Horton with two counts of distribution of methamphetamine (Counts 4 and 5). (Id.). The five other co-defendants in the case negotiated plea agreements. Horton and

2

Following a 4-day trial from May 22 - 26, 2016, a jury found Braddy and Horton guilty on all counts against them in the Superseding Indictment. (Doc. 535).

Subsequently, Braddy filed a Motion for a New Trial, (Doc. 548), as well as a Motion to Dismiss the Superseding Indictment. (Doc. 549). In his motion for a new trial, Braddy claimed that his 6th Amendment right to self-representation had been violated since the district court appointed substitute counsel without first holding a <u>Faretta</u> hearing to evaluate his request to represent himself.[3]

_____

Braddy did not negotiate plea agreements and decided to proceed to trial. In preparing for trial and interviewing witnesses, the government learned that Horton and Braddy were not only involved in methamphetamine trafficking, but were also involved in cocaine and heroin trafficking. The government presented this additional evidence to the grand jury, which, on June 9, 2015, issued a superseding indictment charging Horton and Braddy with conspiracy to distribute methamphetamine, cocaine and heroin (Count 1). (Doc. 389). The superseding indictment also charged Horton with the same two counts of distribution of methamphetamine (Counts 2 and 3) as the original indictment. (Id.).

[3]At the time of his request to represent himself, Braddy's case was assigned to Judge Kosik. However, prior to Braddy's trial, this case was reassigned to the undersigned.

On July 7, 2016, the court issued a Memorandum, (Doc. 554), and Order, (Doc. 555), denying both of Braddy's post-trial motions. *See* United States v. Braddy, 2016 WL 3633536 (M.D. Pa. July 7, 2016).

The court then conducted a sentencing hearing and sentenced Braddy to 235 months in prison. (Doc. 612). *See* United States v. Braddy, 2017 WL 2123565 (M.D. Pa. Apr. 17, 2017).

Braddy, through the same substitute trial counsel appointed by the court, i.e., Atty. Joseph O'Brien, filed a timely notice of appeal raising various issues but failing to raise a *Faretta* issue. On December 6, 2017, the Third Circuit affirmed Braddy's conviction and sentence. *See* United States v. Braddy, 722 F.App'x 231 (3d Cir. 2017).

On April 30, 2018, Braddy timely filed, *pro se*, his Motion to Vacate, Set Aside, or Correct his sentence pursuant to 28 U.S.C. §2255. (Doc. 632). In particular, "Braddy argued that his Sixth Amendment right to counsel was impaired by the ineffective assistance of his appellate counsel" "by failing to raise the *Faretta* issue on appeal, [and that] his prior attorney's performance fell below the constitutionally guaranteed standard of minimum competency." U.S. v. Braddy, 837 Fed.Appx. at 114.

4

On February 6, 2019, the court denied Braddy's §2255 motion. *See* Braddy v. United States, 2019 WL 462136, at *3 (M.D. Pa. Feb. 6, 2019).

On March 7, 2019, Braddy filed, *pro se*, a notice of appeal regarding the denial of his §2255 motion. (Doc. 655). The Third Court granted Braddy a certificate of appealability and appointed counsel to represent him in his appeal. U.S. v. Braddy, 837 Fed.Appx. at 115.

On December 16, 2020, the Third Circuit vacated this court's order denying Braddy's §2255 motion and remanded the case for "evaluation of the performance and the prejudice prongs of his ineffective assistance of appellate counsel claim", i.e., counsel was ineffective by failing to raise the *Faretta* issue on appeal, and by failing to argue on appeal that the district court violated his 6th Amendment right by not granting his request to represent himself at his trial. U.S. v. Braddy, 837 Fed.Appx. at 116.

Upon remand, this court then appointed CJA counsel to represent Braddy with respect to his §2255 motion, pursuant to 18 U.S.C. §3006A, and briefs were filed by both parties. An evidentiary hearing was then conducted on June 7, 2021, pursuant to 28 U.S.C. §2255(b). (Doc. 711, NT). At the

hearing, both Braddy and attorney O'Brien, testified, and Exhibits were presented.[4]

After the hearing, Braddy's counsel filed a supplemental brief in support of the §2255 motion on September 5, 2021, (Doc. 723), and on January 4, 2022, the government filed its supplemental brief in opposition to the motion. (Doc. 731).

On March 2, 2022, Braddy filed, *pro se*, a request for the court to take judicial notice of a Third Circuit case, namely, United States v. Taylor, 21 F.4[th] 94 (3d Cir. 2021), "as new authority, when [the court] rul[es] on [his] §2255 motion." (Doc. 732).

## II.   STANDARD

When a district court judge imposes a sentence on a defendant who believes "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, [the defendant] may move the court which imposed the sentence to vacate, set aside or

---

[4]The hearing Exhibits were admitted and they were, for the most part, documents that were previously filed of record in this case.

correct the sentence." 28 U.S.C. §2255, ¶1; *see* United States v. Eakman, 378 F.3d 294, 297-98 (3d Cir. 2004).

"Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall ... grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. §2255(b).

A §2255 motion "is addressed to the sound discretion of the district court." United States v. Williams, 615 F.2d 585, 591 (3d Cir. 1980). "[A] motion under 28 U.S.C. §2255 is the proper procedure for a federal prisoner to raise a collateral attack on his or her federal sentence for any error that occurred at or prior to sentencing." Paulino v. U.S., 2010 WL 2545547, *2 (W.D.Pa. June 21, 2010) (citations omitted). "In order to prevail on a §2255 motion to vacate, set aside, or correct a sentence, a Petitioner must show '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" U.S. v. Bates, 2008 WL 80048, *2 (M.D.Pa. Jan. 7, 2008) (quoting Mallet v. U.S., 334 F.3d 491, 496-97 (6th Cir. 2003)). "The petitioner bears the burden of proof under §2255 and must demonstrate his right to relief by a preponderance of the evidence." U.S. v. Ayers, 938 F.Supp.2d 108, 112 (D.D.C. 2013) (citation omitted). Braddy's

instant claims fall within the purview of §2255 since they challenge the effectiveness of his counsel. Bates, 2008 WL 80048, *3 ("Claims of ineffective assistance of counsel may be brought in the first instance by way of a §2255 motion regardless of whether the movant could have asserted the claim on direct appeal.") (citing Massaro v. U.S., 538 U.S. 500, 504, 123 S.Ct. 1690 (2003)).

Additionally, "Section 2255 does not afford a remedy for all errors that may have been made at trial or during sentencing", "[r]ather, Section 2255 is implicated only when the alleged error raises 'a fundamental defect which inherently results in a complete miscarriage of justice.'" Williams v. United States, 2016 WL 6892375, *2 (M.D.Pa. Nov. 22, 2016) (internal citations omitted).

The Sixth Amendment to the United States Constitution guarantees a criminal defendant "the assistance of counsel for his defense." U.S. Const. amend. VI. The U.S. Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984) established a two-prong test to evaluate the effectiveness of the assistance of counsel. In the first prong, the defendant must show "that counsel's performance was deficient," id., 687, and must prove this by "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth

8

Amendment." Id. In addition, the defendant must show that "counsel's representation fell below an objective standard of reasonableness." Id., 687-88.

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Id., 689.

In the second prong, a defendant must show that counsel's deficient performance "prejudiced the defense," because "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., 687. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, *cf*. United States v. Valenzuela–Bernal, 458 U.S. 858, 866–867 (1982), and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Id., 693. Rather, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable

probability is a probability sufficient to undermine confidence in the outcome." Id., 694. Thus, to state a successful claim for ineffective assistance of counsel, petitioner must show "both that counsel's performance was deficient, and that the deficiency prejudiced the defense." Wiggins v. Smith, 539 U.S. 510, 521, 123 S.Ct. 2527 (2003). "A failure to make the required showing on either prong defeats a defendant's ineffective assistance of counsel claim." Ayers, 938 F.Supp.2d at 113 (citing in Strickland, 466 U.S. at 700).

## III.   DISCUSSION

This court has jurisdiction over Braddy's motion under §2255 pursuant to pursuant to 28 U.S.C. §§1331 and 2241.

Prior to his trial, Braddy sent a letter to Judge Kosik dated April 13, 2015 in which he wrote, in part, "I, the defendant Reginald Braddy, would like to withdraw attorney Enid N. Harris as my counsel and proceed pro se." (Doc. 711 at 7, 15 & Doc. 356). As the Third Circuit, in U.S. v. Braddy, 837 Fed.Appx. at 113-14, then summarized:

> The trial judge wrote back to Braddy to communicate the adage that "he who represents himself has a fool as a client" and to share the perspective that Braddy's court-appointed counsel [Harris] "has a history of knowing what she is doing." Ltr. from Hon. Edwin M. Kosik to R. Braddy (Apr. 17, 2015) (App. 49). The trial judge further stated that

he would like input from Braddy's counsel on the attorney-client relationship and that "[w]e will take it from there." *Id*.

Nearly one month after Braddy's request to represent himself, and before the judge acted upon that request, Braddy's court-appointed counsel [Harris] moved to withdraw from representing Braddy. In that motion, counsel cited "irreconcilable differences particularly as to appropriate motions to be filed and as to the role of the defendant in dictating of [*sic*] defense counsel's decision-making process and in the determination of defense strategy." Mot. to Withdraw as Counsel (App. 96). The District Court granted that motion but then appointed new substitute counsel [O'Brien on May 18, 2015].

Even with the appointment of new counsel, Braddy continued to submit pre-trial filings *pro se* – instead of through counsel. To justify those uncounseled filings, Braddy invoked the Sixth Amendment and cited *Faretta*. Yet in none of those filings did Braddy express dissatisfaction with his newly appointed substitute counsel or otherwise renew his request to represent himself.

Following his trial, in which O'Brien represented him, and his conviction by the jury, "Braddy filed a motion for a new trial solely on the grounds that his right to self-representation had been violated, and "argued that he was 'completely deprive[d] of his constitutional right to conduct his own defense' because the District Court appointed substitute counsel 'without first holding a hearing to allow the defendant to exercise his Six [*sic*] Amendment right to represent his-self [*sic*] as guaranteed by the United States Constitution.'" U.S. v. Braddy, 837 Fed.Appx. at 114 (citing App. 155-56).

This court then denied Braddy's motion for a new trial. S*ee* United States v. Braddy, 2016 WL 3633536 (M.D. Pa. July 7, 2016). The court

"acknowledged that not conducting a *Faretta* hearing to evaluate Braddy's request to represent himself may have been an error", "[b]ut in reviewing Braddy's conduct following the appointment of substitute counsel, [it] determined that, through acquiescence, Braddy had waived his right to self-representation." U.S. v. Braddy, 837 Fed.Appx. at 114.

In Braddy's appeal of his conviction and sentence, O'Brien, then acting as Braddy's appellate counsel, raised claims challenging the court's rulings on defendant's pre-trial motions, as well as for allowing allegedly improper testimony and evidence at trial, and challenging the reasonableness of his sentence. However, O'Brien failed to raise the 6th Amendment and the *Faretta* issues in Braddy's appeal. Subsequently, the Third Circuit affirmed Braddy's sentence.

Braddy filed his instant *pro se* motion on April 30, 2018. (Doc. 623).

Braddy claims that his appellate counsel, O'Brien, was ineffective for failing to raise on appeal the issues regarding his request to represent himself at trial and whether the district court violated his rights by denying his request without a *Faretta* hearing.

No doubt that Braddy had a "statutory and constitutional right" to self-representation. U.S. v. Braddy, 837 Fed.Appx. at 114 (citing 28 U.S.C. §1654 ("In all courts of the United States the parties may plead and conduct their

12

own cases personally...."); Faretta v. California, 422 U.S. 806, 819, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (holding that the Sixth Amendment guarantees the right to self-representation)).

It is also clear that the two-prong *Strickland* test applies to Braddy's instant claim. *See* U.S. v. Braddy, 837 Fed.Appx. at 115 (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (articulating two components of a Sixth Amendment ineffective assistance of counsel claim: deficient performance and prejudice); Smith v. Murray, 477 U.S. 527, 535–36, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986) (applying the *Strickland* standard to appellate counsel); United States v. Cross, 308 F.3d 308, 315 (3d Cir. 2002) ("The two-prong standard of Strickland v. Washington applies to a defendant's claim that his appellate counsel was ineffective.")).

Here, to show ineffective assistance of counsel, Braddy must demonstrate both (1) that O'Brien's representation as his appellate counsel was objectively unreasonable and, (2) that O'Brien's alleged error by failing to raise the *Faretta* issue on appeal was reasonably likely to have affected the outcome. The court will now discuss the two-prong *Strickland* standard to Braddy's present claim.

### 1. Objective Standard of Reasonableness

As to the first prong of the *Strickland* standard, O'Brien testified that he did not recall, after he was appointed, if he was aware that Braddy had previously written to Judge Kosik requesting that he be allowed to represent himself. Nor did O'Brien recall if he saw Braddy's April 13, 2015 letter to Judge Kosik and the judge's April 17th letter in response, (Doc. 357), in the file he received from Atty. Harris. Further, O'Brien had no recollection of Braddy ever indicating to him that he wanted to represent himself at trial. Specifically, O'Brien recounted in his testimony, (Doc. 711 at 16):

> I don't remember [Braddy] ever making that statement [that he wanted to represent himself.] I visited him. I have my notes. I think I visited him at the Lackawanna County Prison ["LCP"] on over 40 occasions, and I have those dates here with me. And I don't remember him ever requesting at any of those meetings the desire to represent himself. He always appeared to be very satisfied with me and with the steps we were taking, and that's my recollection.

O'Brien also stated that he filed a suppression motion on Braddy's behalf and a request for a *Franks* hearing,. Although O'Brien did include the court's denial of Braddy's suppression motion in the direct appeal he filed, he was also aware that immediately after the motion was denied and prior to trial, Braddy filed, *pro se*, a notice of appeal and referenced *Faretta*. (Doc. 505). O'Brien then discussed Braddy's interlocutory appeal with him and advised him it was premature and that they would raise the issue on appeal

14

if he was convicted. However, O'Brien did not recall if he asked Braddy if he wanted to act as his own counsel at that point. O'Brien was also aware that after he was appointed to represent Braddy, Braddy continued to file *pro se* motions with the court in which he cited *Faretta* and his 6th right to self-representation.

During his several pre-trial meetings with Braddy at LCP, O'Brien was asked if he specifically recalled asking Braddy if he wished to represent himself based on his citation to *Faretta* and the 6th Amendment in his motions, and O'Brien responded:

> No, no. And I -- I never asked [Braddy] -- he never asked me -- he never asked me -- never told me he wanted to represent himself, and I never asked him whether he wanted to represent himself. And I don't see that in this motion. He cites the case of *Faretta*, and he moves for reconsideration of the motion. I don't see anything in here that would have alerted me to the fact that he wanted to represent himself. The mere citing of the *Faretta* case doesn't tell me that. The substance of the motion tells me he wants to have the motion reconsidered.

(Doc. 711 at 20-23)

Also, despite the court's orders advising Braddy to refrain from filing *pro se* pre-trial motions since he was represented by counsel, and after O'Brien advised Braddy he was not authorized to file motions because he had counsel, O'Brien did not recall asking Braddy at that point if he wished to proceed *pro se*. Nor did O'Brien recall Braddy ever telling him that he

wanted to proceed *pro se*. (Doc. 711 at 24-26). Further, Braddy proceeded with his trial and allowed O'Brien to represent him throughout the proceedings. In fact, during the trial, Braddy did not once indicate to this court that he wanted to represent himself.

On June 2, 2016, after his conviction and well before his sentencing on April 17, 2017, Braddy filed, *pro se,* a notice of appeal and a motion for a new trial pursuant to Rule 33. (Docs. 547-548). In his Rule 33 motion, Braddy essentially claimed that he requested to proceed *pro se* with his case in April 2015 pursuant to his 6th Amendment right and *Faretta*, but Judge Kosik denied his request and appointed "his counsel [O'Brien] without a hearing on his right to self-representation." (Doc. 711 at 29-30). Following proper procedure, after Braddy's sentencing, O'Brien filed a notice of appeal. Despite O'Brien's filing, Braddy filed his own *pro se* motion with the Third Circuit to file a supplemental appeal brief since he alleged that O'Brien was forced upon him without his permission. Interestingly, the Third Circuit denied Braddy's motion stating that under its rules *pro se* briefs are prohibited unless counsel files a brief and motion to withdraw under Anders versus California. O'Brien filed an appeal brief for Braddy on June 30, 2017, and included several issues but did not include the issue of self-representation. After

O'Brien filed the appeal brief, from July 28th through September 27th, 2017, Braddy filed several motions with the Third Circuit, including a motion to terminate O'Brien as his appellate attorney and a request to proceed *pro se* under *Faretta*. (Id. at 32-42). However, O'Brien remained Braddy's appellate counsel.

No doubt "[a] criminal defendant has a right to the effective assistance of appellate counsel on the first appeal as of right", United States v. Scripps, 961 F.3d 626, 632 (3d Cir. 2020) (citing Evitts v. Lucey, 469 U.S. 387, 396-97, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985)), and "[t]o assess the performance of appellate counsel, [the court] appl[ies] the two-prong test set forth in *Strickland* …." *Id*. (citation omitted). As to the first prong, "[i]n order to determine whether appellate counsel's performance fell below an objective standard of reasonableness, [the court] must analyze whether [a 6th Amendment violation] even exists." *Id*. "If there was no underlying error, then appellate counsel was not ineffective for failing to raise this issue on appeal." *Id*. (citation omitted). As mentioned, Braddy had a statutory and constitutional right to represent himself. U.S. v. Braddy, 837 Fed.Appx. at 113. Also, under *Faretta,* "a defendant attempting to proceed *pro se* at trial should be made aware of the dangers and disadvantages of self-representation, so that the

record will establish that he knows what he is doing and his choice is made with eyes open." Buhl v. Cooksey, 233 F.3d 783, 798 (3d Cir. 2000) (internal quotations and citation omitted). The court must also determine if the purported waiver of the defendant's Sixth Amendment right to counsel is valid, i.e., is voluntary, knowing and intelligent, and the court must inquire into a defendant's motives to make this determination. *See id*. at 798. A *Faretta* hearing "allows a court to determine if a defendant is truly asserting the right of self-representation, or merely seeking alternative counsel." *Id*. Further, it "assists the court in determining if the request is merely an attempt to delay and derail the proceedings, as opposed to a genuine attempt (no matter how ill-advised) to conduct one's own defense." *Id*. "The trial court's determination that the waiver is knowing, voluntary and intelligent must be based upon a penetrating and comprehensive examination of all the circumstances, and [a] purported waiver of counsel can be deemed effective only where the [trial judge] has made a searching inquiry sufficient to satisfy him that the defendant's waiver was [knowingly made] and voluntary." *Id*. at 799 (internal quotations and citations omitted).

Based on a review of the record and the testimony from the evidentiary hearing, the court finds that Braddy has failed to prove the first prong of the *Strickland* standard with respect to his ineffective assistance of appellate

counsel claim, i.e., O'Brien's performance did not "fall below an objective standard of reasonableness" by failing to include an issue in Braddy's direct appeal regarding self-representation. There was ample evidence in the record, as discussed at the hearing, to show that Braddy, at the very least, waived his desire to proceed *pro se* after O'Brien was appointed to represent him. Braddy's actions, as discussed below, demonstrate that he acquiesced in O'Brien's representation of him and, did not ask O'Brien to withdraw or request this court to allow him to proceed *pro se*. Thus, O'Brien would not have had a good faith basis to raise the issues regarding a 6th Amendment violation and a *Faretta* hearing in Braddy's appeal.

In being "highly deferential" in assessing appellate counsel's performance, as required, *see id.*, Braddy has failed to overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. In <u>Scripps</u>, 961 F.3d at 633-34, the Third Circuit held that it was error for the district court not to hold an evidentiary hearing on defendant's [§2255](§2255) motion and his claim of ineffective assistance of appellate counsel for counsel's failure to raise on appeal the district court's alleged Rule 32 error by not directly asking defendant if he wanted to speak at his sentencing. The Third Circuit remanded the case for an evidentiary hearing. The Third Circuit, *id.*, explained:

19

[I]t is possible that appellate counsel's failure to raise the Rule 32 error on direct appeal "fell below an objective standard of reasonableness" under *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052. *See Goff v. Bagley*, 601 F.3d 445, 466 (6th Cir. 2010) ("Failure on the part of [ ] appellate counsel to raise such an obviously winning claim clearly falls below an objective standard of reasonableness ...."). However, without understanding counsel's reasons for failing to raise this error on appeal, we cannot categorically conclude that appellate counsel fell below an objective standard of reasonableness. *See Marshall v. Hendricks*, 307 F.3d 36, 115 (3d Cir. 2002) (concluding that the objective standard of reasonableness analysis "needs to be made with an understanding of counsel's thought process"). This is because we cannot presume that counsel's failure to raise the Rule 32 error on appeal automatically constitutes deficient performance. Rather, courts must "indulge a strong presumption" that counsel was effective and may only find otherwise if the defendant "overcome[s] the presumption that ... the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052 (internal quotation marks and citation omitted).

Here, after remand, the court held an evidentiary hearing and heard O'Brien testify as to his thought process and his reasons regarding the appeal issues he raised and allegedly failed to raise for Braddy, and it heard from Braddy about his alleged repeated requests for self-representation.

Braddy indicates in his request for the court to take judicial notice, (Doc. 732), that prior to O'Brien's appointment as new counsel, Judge Kosik failed to conduct an inquiry pursuant to *Faretta* regarding whether Braddy's assertion of his right to represent himself was voluntarily, intelligently, and competently made, and that this was error as the Third Circuit recently reaffirmed in United States v. Taylor, 21 F.4th 94 (3d Cir. 2021). However,

Judge Kosik never actually denied Braddy's request to proceed *pro se*. Rather, the judge addressed Braddy's issues with Harris and appointed O'Brien as his new counsel. Through his actions, inaction and conduct following O'Brien's appointment, Braddy then waived his request to proceed *pro se*.

Additionally, as discussed in more detail below, the court finds that O'Brien's failure to raise the issue of an alleged 6th Amendment violation of Braddy's right to self-representation and his right to a *Faretta* hearing did not constitute deficient performance based on the specific facts and record of this case. These issues were not obvious since O'Brien clearly testified that Braddy <u>never</u> raised with him his 6th Amendment right to self-representation. *See* <u>Walker v. Phelps</u>, 910 F.Supp.2d 734, 739-40 (D. De. Dec. 19, 2012) ("Once a defendant unequivocally and timely asserts his constitutional right to self-representation, the trial court must conduct a colloquy ("*Faretta* inquiry") with the defendant to determine that his waiver of his right to counsel is knowing and voluntary, and inform him of the nature of the charges against him, the possible penalties, and the dangers of self-representation.") (citing <u>Buhl, 233 F.3d at 791</u>). Moreover, O'Brien credibly testified that if Braddy had instructed him to raise the stated 6th Amendment and *Faretta* issues on appeal, he would have raised them. There were simply too many disputed

21

facts regarding Braddy's alleged desire to represent himself and these facts are insufficient to overcome the "strong presumption" that O'Brien was effective. The record demonstrates that O'Brien's representation of Braddy did not fall below an objective standard of reasonableness by failing to raise the 6th Amendment and *Faretta* issues on direct appeal.

### 2. Prejudice

"Where a petitioner challenges the validity of his sentence under §2255, '[t]he test for prejudice under *Strickland* is not whether petitioner would likely prevail upon remand, but whether [the Third Circuit] would have likely reversed and ordered a remand had the issue been raised on direct appeal." *Id*. (quoting United States v. Mannino, 212 F.3d 835, 844 (3d Cir. 2000)).

In the instant case, as in Scripps, 961 F.3d at 634, "[Braddy] challenged his sentence on direct appeal, but [the Third Circuit] found no error based upon the issues raised [by O'Brien] and affirmed his sentence." "[T]he court must therefore determine if there is a reasonable probability that [Braddy's] direct appeal would have come out differently if appellate counsel had raised the [6th Amendment issues that he was deprived of his right to represent himself and to have a *Faretta* hearing]." *Id*. Braddy essentially contends that he was prejudiced by his appellate counsel's deficient performance because,

if these issues had been raised in his direct appeal, the Third Circuit would have remanded his case for a *Faretta* hearing, as opposed to affirming his conviction and sentence, and if he was allowed to represent himself after the hearing, he would have received a new trial in which he could have proceeded *pro se*.

No doubt that an error involving the right to self-representation is structural and not harmless error. *See* United States v. Peppers, 302 F.3d 120, 137 (3d Cir. 2002). However, based on the record in this case, the court finds that there is not a reasonable probability that Braddy's direct appeal would have come out differently if his appellate counsel had raised the stated issues since there was no 6th Amendment violation. The court finds that Braddy has failed to show that his 6th Amendment right to self-representation was violated and that he was deprived of a *Faretta* hearing prior to his trial, in light of the record which shows that Braddy's request to represent himself was not decided by Judge Kosik, (*see* Doc. 357), and most compellingly Braddy's subsequent conduct demonstrated that he was willing to and did participate with O'Brien as his counsel at trial and, that he had effectively waived any previous suggestion to represent himself. *See* Davido v. Beard, 2021 WL 3051904, *39 (E.D. Pa. July 20, 2021) (holding that "[a] waiver of the right to counsel must be made prior to trial, must be unequivocal")

23

(citation omitted). Thus, there is a reasonable probability that if the issues were raised on appeal, the Third Circuit would have found, as this court found in denying Braddy's motion for a new trial, *see id.*, that "in reviewing Braddy's conduct following the appointment of substitute counsel, [O'Brien], ..., through acquiescence, Braddy had waived his right to self-representation." *See* Buhl, 233 F.3d at 789-90 (holding that "[w]aiver of the right to counsel depends in each case upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.") (internal quotations and citations omitted). Further, "Courts must indulge every reasonable presumption against a waiver of counsel", and "[i]n order to overcome this presumption, and conduct his/her own defense, a defendant must clearly and unequivocally ask to proceed *pro se*." *Id*. at 790 (citing Faretta, 422 U.S. at 835, 95 S.Ct. 2525 (noting that the defendant had properly asserted his right to represent himself because he "clearly and unequivocally declared to the trial judge that he wanted to represent himself and did not want counsel")).

As the court in Walker, 910 F.Supp.2d at 741, explained:

[Braddy's] *Faretta* claim [must be analyzed by the court] pursuant to the three-pronged inquiry articulated in *Buhl v. Cooksey,* which requires the court to: (1) determine if petitioner clearly and unequivocally asserted his right to self-representation, thereby triggering the trial court's obligation to conduct a *Faretta* inquiry; (2)

determine if the trial court's *Faretta* inquiry was adequate; and (3) consider what impact, if any, petitioner's subsequent conduct had upon his previously asserted right to self-representation. *See* Buhl, 233 F.3d at 791–800; United States v. Peppers, 302 F.3d 120, 132 (3d Cir. 2002) [citation omitted].

Based on the record of this case, there are disputed facts as to whether Braddy "clearly and unequivocally" declared to this court that he did not want counsel to represent him since Judge Kosik resolved Braddy's complaints with Harris and since his conduct subsequent to O'Brien's appointment demonstrated that he waived his right to represent himself at trial. *See* Buhl, 233 F.3d at 790. In fact, O'Brien testified that Braddy <u>never</u> expressed his dissatisfaction with him and Braddy <u>never</u> told him that he no longer wanted O'Brien to represent him for the trial. Nor did Braddy ever tell O'Brien that he wished or requested to proceed *pro se*, either at trial or during his appeal, according to O'Brien. Indeed, if Braddy had told O'Brien he wished to proceed *pro se*, based on his extensive background in handling the defense of numerous criminal cases for almost 46 years in federal court, O'Brien testified that he would have brought this to the court's attention. (Doc. 711 at 44). Braddy also met with O'Brien about 40 times at LCP prior to his trial to discuss his case, and then at his trial, continued to allow O'Brien to represent him. Significantly, in some of his *pro se* court filings, such as his appeal of the court's denial of his suppression motion, (Doc. 505), Braddy wrote "now

comes the defendant, Reginald Braddy, *pro se* pursuant to Faretta versus California invokes his Sixth Amendment **right to participate with counsel** to make defense to appeal order of Judge Edwin M. Kosik." (emphasis added). The court does not find convincing Braddy's testimony that he was only referring to the *Faretta* holding in his document and that he no longer wanted O'Brien to represent him based on Braddy's subsequent conduct of allowing O'Brien to proceed as his counsel. O'Brien also indicated that "During jury selection and trial itself, Mr. Braddy never voiced any concern to Judge Mannion in writing or orally about proceeding *pro se*."

Additionally, O'Brien discussed with Braddy the issues to be filed on appeal and he testified that Braddy never directed him to raise as issues in the appeal the alleged denial of a *Faretta* hearing and *pro se* representation. Specifically, O'Brien testified that after the trial, he met with Braddy prior to filing a notice of appeal, and they discussed the issues to be raised on appeal. O'Brien stated that Braddy did not direct him to raise in his appeal either the *Faretta* issue or the 6th Amendment self-representation issue. Indeed, O'Brien stated that Braddy never mentioned either issue. (Doc. 711 at 48-49). In fact, if Braddy had wanted to add these issues, O'Brien stated unequivocally that he would have raised these issues. Braddy paints a different picture regarding his conversations with O'Brien about his appeal

issues. Braddy testified that while he was still at LCP, he did not ask O'Brien to raise the 6th Amendment issue, but that when he arrived at FCI Safford he stated that he told O'Brien by telephone, sometime between June 17th and June 19th 2017, to raise his 6th Amendment claim. He also stated that this was "the only issue I wanted him to raise."

However, Braddy also contradicted himself at the hearing, and when he was asked by his own counsel if he told O'Brien to raise the *Faretta* issue or *pro se* issue on appeal, (Doc. 711 at 69), he stated:

Q: So you never asked Attorney O'Brien to raise the issue of the lack of *Faretta* hearing or your denial . .

A [Braddy]: On appeal?

Q: . . . to represent yourself?

A: No.

Q: You didn't?

A: No.

The court finds O'Brien's testimony more credible than Braddy's. When O'Brien filed Braddy's appeal brief on June 30, 2017, after Braddy's alleged telephone call with him, there was simply no possible reason for O'Brien not to add the 6th Amendment issue and *Faretta* issue in the brief if Braddy had told him to raise them. In fact, it is not entirely clear from Braddy's testimony

27

if he had really asked O'Brien to include as an appeal issue the denial of a *Franks* hearing, which O'Brien did raise, as opposed to the *Faretta* hearing issue. O'Brien has practiced before this court for many years and based on his long history of outstanding representation of defendants in numerous criminal cases, as well as his excellent reputation, the court finds it incredulous that O'Brien would ignore Braddy's alleged direct instruction to add the 6th Amendment issue to his appeal brief. In fact, O'Brien has absolutely no reason not to be truthful. Braddy on the other hand has a very compelling reason not to be truthful, namely the granting of his §2255 motion, the reversal of his conviction, and the granting of a new trial.

In summary, O'Brien stated that Braddy never requested to represent himself at any time before and after trial. Further, O'Brien was aware that Braddy filed *pro se* documents and mentioned *Faretta* in them but he was not aware of Braddy making a specific request to represent himself. (Doc. 711 at 47-51). Rather, the record indicates that Braddy wanted O'Brien to represent him but he also wanted to be able to file his own *pro se* documents with the court and to speak in court without being asked any questions by either his counsel or government counsel. Notably, Braddy testified, (Doc. 711 at 77), that his April 2015, Doc. 356 filing, was the only document he filed indicating that he wanted his counsel to withdraw, i.e., Harris, and

28

wanted to proceed *pro se*. Remarkedly, this was the only time Braddy used the words that he wanted to proceed *pro se*. Also, it is significant that in the over one year period prior to trial that O'Brien represented Braddy, Braddy never told O'Brien that he wanted to proceed *pro se*. (Id. at 80). Braddy's explanation as to why he never told O'Brien he wanted to proceed *pro se* and why he never told this court that he wanted to proceed *pro se* is simply not credible, i.e., he thought Judge Kosik already denied his request. Considering Braddy's extensive history with this court and as being someone who was admittedly not "shy about" speaking up, filing motions, and making requests to the court, including reconsideration motions, this is just not credible. (Id. at 80-85). Significantly, as the government points out, (Doc. 731 at 26), "at the time of Attorney O'Brien's appointment, the matter of Braddy's self-representation had *not* yet been ruled upon, and thus there was no reason for Braddy *not* to reiterate his request." (emphasis original). (*See* Doc. 357). The facts of this case, i.e., Judge Kosik resolved Braddy's request to represent himself prior to deciding it by replacing Harris with O'Brien and then Braddy's waiver of his request through his conduct after O'Brien's appointment, distinguishes Braddy's case from United States v. Taylor, 21 F.4th 94, 102 (3d Cir. 2021), in which the Third Circuit held that the district court erred in denying defendant's request to represent himself and to

29

conduct a *Faretta* hearing. In <u>Taylor</u>, *id.* at 97, the Third Circuit held that since the district court denied defendant's request to represent himself "without completing the requisite inquiry", it would vacate defendant's conviction and remand his case for a new trial. Here, as mentioned, the court delayed ruling on Braddy's request for self-representation, appointed new counsel, O'Brien, and then Braddy waived his request and acquiesced to O'Brien's representation. Thus, through his conduct after O'Brien's appointment Braddy demonstrated a desire to waive his self-representation request. Moreover, as this court noted at the hearing, the record demonstrated that whenever Braddy received a decision he did not like, he filed a motion for reconsideration. However, Braddy did not file a motion requesting Judge Kosik to reconsider the appointment of O'Brien or file a motion after Harris withdrew indicating that he still wished to proceed with his self-representation request. In fact, Braddy never brought it to the attention of either Judge Kosik or to this court that after O'Brien was appointed he wanted to proceed *pro se*. (Doc. 711 at 94). No doubt that if Braddy had not waived his request for self-representation and the court denied it without conducting a *Faretta* hearing, it would have been error. *See* <u>Taylor</u>, 21 F.4h at 99 (holding that "[b]ecause the District Court commits structural error if it improperly denies a

defendant's request to represent himself, [the Third Circuit] may not consider its error harmless.").

In light of the record as a whole, the court finds O'Brien's testimony on all of the relevant matters more credible than Braddy's. Nor can it be ignored that at his sentencing, Braddy received a two-level enhancement for willfully obstructing or impeding or attempting to obstruct or impede the administration of justice by providing false testimony at trial and, by intimidating co-defendant Scott Borushak prior to trial and instructing him to provide false testimony. (Doc. 711 at 88-90). Thus, Braddy has a history of falsely testifying and suborning perjury by others.

In *Faretta*, "[t]he [Supreme] Court concluded that [the government] may not force a criminal defendant to be represented by a lawyer if the defendant properly asserts his/her right to self-representation", and "a defendant must be allowed to represent him/herself when a proper request is made and counsel is waived, …." Buhl, 233 F.3d at 791 (internal citations omitted). "[T]he issue is whether a defendant knowingly, intelligently, and voluntarily waived the right to be represented by counsel, by clearly asserting his/her right of self-representation under the Sixth Amendment." *Id*. "[T]he defendant, in a post-conviction setting, has the burden of showing prejudice" from ineffective assistance of counsel. Giamo, 153 F.Supp.3d at 760. Here,

the court has found that there is no prejudice to Braddy since there is no reasonable probability that the Third Circuit would have decided his direct appeal any differently if O'Brien had raised the stated 6th Amendment and *Faretta* issues because Braddy never knowingly, intelligently, and voluntarily waived the right to be represented by O'Brien. Thus, Braddy waived his request to represent himself before it was ever decided and continued in that waiver long after his new counsel was appointed. *See* Walker, 910 F.Supp.2d at 742 (citing McKaskle v. Wiggins, 465 U.S. 168, 182–84, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) ("the Supreme Court opined that a defendant may waive his *Faretta* rights even after he has been granted the right to proceed *pro se* and standby counsel has been appointed, explaining that '[o]nce a *pro se* defendant invites or agrees to any substantial participation by counsel, subsequent appearances by counsel must be presumed to be with the defendant's acquiescence, at least until the defendant expressly and unambiguously renews his request that standby counsel be silenced.'"); Faretta, 422 U.S. at 821, 95 S.Ct. 2525 (holding that "representation by unwanted counsel is constitutionally impermissible 'unless the accused has acquiesced in such representation.'").

Accordingly, in light of the extensive record in this case, the court finds that Braddy has failed to prove prejudice under *Strickland* with respect to his

ineffective assistance of appellate counsel claim since "there is no reasonable probability that, but for [appellate] counsel's [alleged] unprofessional errors, the result of [Braddy's direct appeal] would have been different." United States v. Shedrick, 493 F.3d 292, 299 (3d Cir. 2007). Therefore, on this basis, Braddy's ineffective assistance of appellate counsel claim concerning O'Brien's failure to raise the stated self-representation issue on appeal, will be denied since he cannot establish any prejudice. *See* United States v. Green, 2016 WL 11201635, *4 (E.D. Pa. Dec. 9, 2016) (holding that Strickland, 466 U.S. at 697 "permitted denial of an ineffective assistance of counsel claim solely on a finding of no prejudice").

Thus, after an evidentiary hearing, the record conclusively shows that Braddy is not entitled to habeas relief for his remaining ineffective assistance of appellate counsel claim and, his §2255 motion and his request for a new trial will be denied.[5]

---

[5] The court notes that the Third Circuit only remanded Braddy's ineffective assistance of appellate counsel claim raised in his §2255 motion "for evaluation of the [*Strickland*] performance and the prejudice prongs." *See* Braddy, 837 Fed.Appx. at 116.

## IV.   CERTIFICATE OF APPEALABILITY

A petitioner may not file an appeal from a final order unless a district or circuit judge issues a certificate of appealability ("COA") pursuant to 28 U.S.C. §2253(c). A COA shall not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). The petitioner must show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003); *see also* Slack v. McDaniel, 529 U.S. 473, 484 (2000). Here, a COA will issue because Braddy has made the requisite showing of the possible denial of his 6th Amendment right and since jurists of reason may disagree with this court's resolution of his claim.


## V.   CONCLUSION

Based on the foregoing, the court will **DENY** Braddy's §2255 motion, **(Doc. 632)**, with respect to his remaining ineffective assistance of appellate counsel claim and his request for a new trial. Further, a certificate of appealability pursuant to 28 U.S.C. §2253(c)(2) shall issue regarding Braddy's stated ineffective assistance of appellate counsel claim.

An appropriate order shall follow.

*s/ Malachy E. Mannion*
Malachy E. Mannion
United States District Judge

**Dated: April 14, 2022**
14-104-05